*In the Matter of the Petition of Kern Hosein*, Misc. No. 24, September Term, 2022.  Per Curiam Opinion.

**INTERPRETATION OF JUDICIAL ADMINISTRATIVE TOLLING ORDERS** – During the COVID-19 pandemic, Chief Judge Mary Ellen Barbera issued a series of administrative orders tolling the running of statutes of limitations and other deadlines for the initiation of matters.  The orders tolled those deadlines from March 16, 2020 through July 20, 2020, the date on which court clerks' offices were reopened to the public.  In the revised administrative order that terminated the tolling period, Chief Judge Barbera extended the deadlines by an additional 15 days.  The Supreme Court held that the 15-day extension applied only to those matters with deadlines that were suspended during the closure of the clerks' offices between March 16, 2020 and July 20, 2020.

Circuit Court for Baltimore City
Case No. 24-C-22-000458
Argued: May 4, 2023

IN THE SUPREME COURT

OF MARYLAND*

Misc. No. 24

September Term, 2022

IN THE MATTER OF THE PETITION
OF KERN HOSEIN

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Per Curiam Opinion
Fader, C.J., Booth, and Gould, JJ., concur.
Hotten., J, concurs.
Watts, Biran, and Eaves, JJ., dissent.

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

Filed: August 14, 2023

* During the November 8, 2022 general election, the voters of Maryland ratified a
constitutional amendment changing the name of the Court of Appeals of Maryland to the
Supreme Court of Maryland.  The name change took effect on December 14, 2022.

During the early phases of the State of Maryland's response to the COVID-19 pandemic, former Chief Judge[1] Mary Ellen Barbera issued an administrative tolling order on April 3, 2020. The order tolled deadlines related to the initiation of matters effective March 16, 2020, the date on which court clerks' offices had closed due to the pandemic. Chief Judge Barbera later issued a revised administrative order that terminated the tolling period effective as of the date the clerks' offices reopened on July 20, 2020. The revised order also extended the filing deadlines to initiate matters by an additional fifteen days. This appeal concerns the scope of that additional fifteen-day extension.

Kern Hosein ("Petitioner"), a Baltimore City police officer, sustained an injury during a motor vehicle accident while responding to an emergency call. On October 6, 2018, Petitioner filed for Line-of-Duty Disability Retirement with the Fire and Police Employees' Retirement System for the City of Baltimore ("Respondent"). The Hearing Examiner denied Petitioner's request and granted him Non-Line-of-Duty Disability Retirement. A copy of the decision was mailed to Petitioner on December 22, 2021. Petitioner filed a Petition for Judicial Review in the Circuit Court for Baltimore City on January 25, 2022.[2] Respondent moved to dismiss, arguing that the petition was time-barred

---

[1] During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the title of the "Chief Judge" of this Court to "Chief Justice." Because the change did not go into effect until after all of the events that are relevant to this appeal, we shall use the title as it existed at all relevant times and as it was reflected in the administrative orders that are at the heart of this matter.

[2] There was some confusion regarding the filing date. The record reflects and both parties agree that the date stamp on the Petition for Judicial Review indicates it was filed on January 25, 2022. The case summary lists the filing date as January 26, 2022 and the

because it was filed after the thirty-day deadline of January 21, 2022. Petitioner asserted that his filing was timely because his deadline was February 7, 2022. He reasoned that the fifteen-day extension under the administrative tolling orders applied to all matters, including his case, with filing deadlines that fell within the COVID-19 emergency period between March 16, 2020 and April 3, 2022.

The circuit court granted the motion to dismiss, concluding that the extension had applied only to deadlines that were tolled during the closure of the clerks' offices between March 16, 2020 and July 20, 2020. Petitioner timely appealed to the Appellate Court of Maryland.[3] While the case was pending, the Appellate Court certified the following question to this Court: "Does the 15-day extension apply to all cases whose statute of limitations and deadlines related to initiation expired between March 16, 2020, and April 3, 2022?" Pursuant to Rule 8-304(c)(3), we issued a writ of *certiorari* that included the entire action on February 24, 2023. We answer the certified question in the negative and hold that the fifteen-day extension applied only to cases with deadlines that were suspended during the closure of the clerks' offices between March 16, 2020 and July 20, 2020.[4] We therefore affirm the circuit court's judgment.

---

docket "[e]ntered" date as January 27, 2022. As the choice among these dates is not relevant to the outcome of this case, we will consider January 25, 2022 as the filing date.

[3] During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

[4] Four members of the panel—Chief Justice Fader and Justices Hotten, Booth, and Gould—join this per curiam opinion and subscribe to the holding stated in it. Chief Justice Fader has filed a plurality concurring opinion, which Justice Booth and Justice Gould join.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Underlying Factual Background.**

   A.     *The Chief Judge's administrative orders.*[5]

On April 3, 2020, then-Chief Judge Barbera issued the "Administrative Order on Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters[,]" ("First Administrative Order")[6] pursuant to her authority under Article IV, § 18(b)(1) of the Maryland Constitution and Maryland Rule 16-1003(a)(7).[7]

---

Justice Hotten has filed a separate concurring opinion.  Justice Biran has filed a dissenting opinion, which Justice Watts and Justice Eaves join.

[5] We will limit our discussion to the pertinent history of the administrative tolling orders.  *See Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 341–63, 274 A.3d 412, 416–29 (2022) (providing an extensive background regarding the State of Maryland's response to the COVID-19 pandemic).

[6] For brevity, further references and citations to the former Chief Judge's administrative tolling orders will follow a similar shorthand.

[7] Md. Const. art. IV, § 18(b)(1) (providing that the Chief Judge "shall be the administrative head of the Judicial system of the State"); Md. Rule 16-1003(a)(7) (providing that the Chief Judge may "suspend, toll, extend, or otherwise grant relief from time deadlines, . . . where there is no practical ability of a party subject to such a deadline, . . . to comply with the deadline . . . or seek other relief").  The Chief Judge's authority to issue the administrative tolling orders derived from Title 16, Chapter 1000 of the Maryland Rules, which were adopted to ensure the Judiciary could effectively respond to the COVID-19 pandemic.  In *Murphy*, we described the adoption of those rules as follows:

> On March 13, 2020, the Rules Committee considered a set of proposed rules relating to the emergency authority of the Chief Judge. . . . The Rules Committee approved the proposed rules with minor amendments and submitted its report to the Court of Appeals[.] . . . [On] March 16, the [then-]Court of Appeals considered the rules in an open hearing.  The Court adopted the proposed rules, which are codified at Maryland Rule 16-1001 *et*

*First Admin. Ord.* at 1 (Apr. 3, 2020), archived at: https://perma.cc/568M-28TV. The First Administrative Order tolled the filing deadlines regarding the initiation of matters "effective March 16, 2020, by the number of days that the courts [were] closed to the public due to the COVID-19 emergency[.]" *First Admin. Ord.* at 2. The First Administrative Order noted that "[s]uch deadlines further shall be extended by a period to be described in an order by the Chief Judge of the Court of Appeals terminating the COVID-19 emergency period[.]" *Id.* The First Administrative Order also provided that "[a]ny such filings made within the period to be described [in a subsequent order] shall relate back to the day before the deadline expired[.]" *Id.*

The First Administrative Order was amended several times. On April 24, 2020, former Chief Judge Barbera issued an Amended Administrative Order, which clarified that "no . . . parties shall be compelled to prove . . . their practical inability to comply with [a deadline related to the initiation of a matter] if it occurred during the COVID-19 emergency to obtain the relief that this Administrative Order provides[.]" *Am. Admin. Ord. Clarifying* at 2 (Apr. 24, 2020), archived at: https://perma.cc/87KX-Y957. Shortly thereafter, the former Chief Judge issued another Amended Administrative Order on May 4, 2020, which also clarified that the tolling period applied to "deadlines to conduct pending judicial

---

*seq*[.] . . . [T]hose rules, among other things, delegated to the Chief Judge a conditional authority to extend deadlines that was substantially analogous to the authority that the Governor's March 12 order had granted to heads of the units of State and local governments for deadlines imposed by the laws that the agencies in those units administered.

478 Md. at 356–57, 274 A.3d at 425–26 (cleaned up).

proceedings[.]" *Am. Admin. Ord. Further Clarifying* at 3 (May 4, 2020), archived at:

https://perma.cc/9T6H-VPFY. Then, on May 22, 2020, the former Chief Judge issued a

Revised Administrative Order, which provided that the "offices of the clerks of court

[would] be reopened to the public on July 20, 2020," pursuant to a separate administrative

order. *Revised Admin. Ord.* at 2 (May 22, 2020), archived at: https://perma.cc/58SR-

UWEH (citing *Administrative Order On the Progressive Resumption of Full Function of*

*Judiciary Operations Previously Restricted Due to the COVID-19 Emergency* (May 22,

2020), archived at: https://perma.cc/T34Y-SBN7).[8]

The Revised Administrative Order defined the timeframe when deadlines related to

the initiation of matters were "tolled or suspended" as "the days that the offices of the

clerks of court were closed to the public (from March 16, 2020 through July 20, 2020)[.]"

*Id.* This order also introduced a fifteen-day extension provision: "With the offices of the

clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate

matters are hereby extended by an additional 15 days[.]" *Id.* at 3 (footnote omitted). This

provision included a footnote example of how the extension would apply:

> "[I]f two days remained for the filing of a new matter on March 15, 2020,
> then two days would have remained upon the reopening of the offices of the

---

[8] The administrative order regarding the resumption of judiciary operations limited the types of matters that courts, particularly circuit and district courts, were permitted to hear based on the "Phase" that was in place. Phase I limited courts to emergency and urgent matters; Phase II required this Court and the Appellate Court of Maryland to resume full operations, whereas the circuit and district courts remained largely limited to urgent matters and cases that could be resolved remotely; Phase III required circuit and district courts to resume, among other things, motions hearings and evidentiary hearings; Phase IV required courts to "resume non-jury trials and contested hearings in criminal, civil, family, and juvenile matters[;]" and Phase V resumed full operations for all courts. *Admin. Ord. on Prog. Resum., Ex.* at 1–18.

clerks of court to the public on July 20, 2020. With the additional fifteen days, seventeen days would be left for a timely filing, beginning July 20, 2020."

*Id.* at 3 n.1. The Revised Administrative Order also amended the relation-back provision to provide: "[a]ny such filings made within the period" of the four-month closure and the fifteen-day extension "shall relate back to the day before the deadline would have expired had it not been tolled or suspended[.]" *Id.* at 3.

The Fourth Revised Administrative Order, issued on November 12, 2020, and all subsequent administrative tolling orders no longer purported to impose the fifteen-day extension directly but included the following language: "With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been, extended by previous Order, by an additional 15 days[.]" *Fourth Revised Admin. Ord.* at 3 (Nov. 12, 2020), archived at: https://perma.cc/JH9Y-SPE8 (footnote omitted). The Fifth Revised Administrative Order, issued on November 24, 2020, added a provision that retroactively defined "matters" to which the tolling period applied as claims with "deadlines related to initiation [that] would have expired between March 16, 2020, through the termination date of COVID-19 emergency operations in the Judiciary[.]" *Fifth Revised Admin. Ord.* at 3 (Nov. 24, 2020), archived at: https://perma.cc/NQY3-LQMQ. The Fifth Revised Administrative Order also altered the relation-back provision to account for claims with deadlines that would have elapsed during the COVID-19 emergency period, as described in the provision that retroactively defined "matters[.]" *Id.* at 4.

6

Former Chief Judge Barbera's subsequent orders, including the Tenth Revised Administrative Order at issue here, retained the pertinent language from prior administrative tolling orders. *See Tenth Revised Admin. Ord.* (Aug., 6, 2021), archived at: https://perma.cc/5RFY-XAFV. The Tenth Revised Administrative Order, dated August 6, 2021, contained, in relevant part, the following preamble:

> WHEREAS, In instances of emergency conditions, whether natural or otherwise, that significantly disrupt access to or the operations of one or more courts or other judicial facilities of the State or the ability of the Judiciary to operate effectively, the Chief Judge of the Court of Appeals may be required to determine the extent to which court operations or judicial functions shall continue; and
>
> WHEREAS, Due to the outbreak of the novel coronavirus, COVID-19, and consistent with guidance issued by the Centers for Disease Control and Prevention (CDC) and the Maryland Department of Health (MDH), an emergency exists for which measures continue to be required to mitigate potential for exposure for individuals visiting a court or judicial facility and for judicial personnel; and
>
> WHEREAS, The impact of the restrictions required to respond to the COVID-19 pandemic has had a widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses, with the impact falling hardest upon those who are impoverished; and
>
> WHEREAS, The detrimental impact of the COVID-19 pandemic is so widespread as to have created a general and pervasive practical inability for certain deadlines to be met[.]

*Id.* at 1–2. The Tenth Revised Administrative Order provided, in relevant part, the following operative language:

> (a)  By previous Order, pursuant to Maryland Rule 16-1003(a)(7), all statutory and rules deadlines related to the initiation of matters

required to be filed in a Maryland state trial or appellate court, including statutes of limitations, were tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

(b) By this Order, those same deadlines remained tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

(c) Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove . . . their practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Order provides; and

(d) For the purposes of tolling statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days that the offices of the clerks of court were closed to the public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of that matter; and

(e) For the purposes of tolling statutes of limitations and other deadlines related to the initiation of matters, in this Order, "matters" are, *nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of the COVID-19 emergency operations in the Judiciary as determined by the Chief Judge of the Court of Appeals; and

(f) With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days; and

(g) Any such filing made within the period described in (d) and (e) shall relate back to the day before the deadline would have expired had it not been tolled or suspended[.]

*Id.* at 2–4 (cleaned up). Section (f) retained the same footnote example from the Revised

Administrative Order. *Id.* at 4. Several months thereafter, on March 28, 2022, then-Chief

8

Judge Joseph M. Getty issued the Final Administrative Order, which terminated "COVID-19 emergency operations in the Judiciary" effective April 4, 2022. *Final Admin. Ord.* at 3 (Mar., 28, 2022), archived at: https://perma.cc/CTL2-JCAV.

B.      *The instant dispute.*

Petitioner was injured in a motor vehicle accident while he was responding to an emergency call on October 8, 2013. Petitioner applied for Line-of-Duty Disability Retirement with Respondent on October 6, 2018. Following a hearing on December 13, 2021, the Hearing Examiner denied Petitioner's claim for Line-of-Duty Disability Retirement and granted him Non-Line-of-Duty Disability Retirement. A copy of the decision was mailed to Petitioner on December 22, 2021. On January 25, 2022, Petitioner filed a Petition for Judicial Review in the Circuit Court for Baltimore City. During all relevant times, the Tenth Revised Administrative Order remained in effect.

## II.      Proceedings in the Circuit Court for Baltimore City.

On February 15, 2022, Respondent filed a motion to dismiss, arguing that the Petition for Judicial Review was untimely under Maryland Rule 7-203(a)(2) and Baltimore City Code, Article 22, § 33(l)(14), because it was filed after the thirty-day deadline of January 21, 2022. *See* Md. Rule 7-203(a)(2) ("[A] petition for judicial review shall be filed within 30 days after . . . the date the administrative agency sent notice of the order or action to the petitioner[.]"); *see also* Balt. City Code, Art. 22, § 33(l)(14) ("If neither party seeks judicial review within 30 days following the mailing of the hearing examiner's written findings of fact, the hearing examiner's determination is final and binding[.]"). The circuit court conducted a motions hearing on May 4, 2022.

During that hearing, Respondent argued that the fifteen-day extension under the Tenth Revised Administrative Order only applied to "cases that were affected by the court closure[]" between March 16, 2020, and July 20, 2020. Respondent asserted that the extension did not apply to the petition because the "statute of limitations did not [] accrue until December 22nd, 2021," which occurred after the clerks' offices reopened. Respondent claimed that the footnote example in Section (f) supported its argument, since it was limited to a case that was affected by the closure. Respondent maintained that this Court in *Murphy v. Liberty Mutual Insurance Co.*, 478 Md. 333, 362, 274 A.3d 412, 428 (2022), was "very clear that the tolling order [was] directly ti[ed] to the closure of the courts[,]" because the Order stated that the Revised Administrative Order had "further extended the filing deadlines for the initiation of matters by an additional 15 days past the date on which [c]lerks' [o]ffice[s] reopened[.]" Respondent claimed that the Tenth Revised Administrative Order did not expressly provide that the fifteen-day extension would apply prospectively to all claims and that such an interpretation required injecting language into the Order.

Petitioner conceded that he filed his petition after the thirty-day deadline. He argued, however, that the Order's definition of "matters" extended the grace period to all claims that could have been initiated "between March 16, 2020, through the termination date of COVID-19 emergency operations[,]" which was April 3, 2022 according to the Final Administrative Order. Since he filed his petition before April 3, 2022, Petitioner maintained that his filing deadline was February 7, 2022. Petitioner claimed that the preamble supported his position because it stated that the COVID-19 pandemic restrictions

10

had impeded litigants from meeting filing deadlines. Petitioner considered it "coincidental" that the Tenth Revised Administrative Order exclusively discussed filing deadlines that were tolled during the four-month closure. Petitioner asserted that this Court's decision in *Murphy* did not address the scope of the extension.

The circuit court granted Respondent's motion to dismiss. The circuit court acknowledged that the preamble "suggest[ed] a very progressive openminded mission with regard to relaxing rules[]" governing filing deadlines, but noted the several "specific references which inextricably intertwine[d] . . . the ability of litigants . . . to meet the statute of limitations with . . . the number of days that the [o]ffices of the [c]lerks of the [c]ourt were closed." The circuit court determined that the fifteen-day extension was "intended [for] people whose statute of limitations would have run during the time up to which the court wasn't open at all until the [c]lerks' [o]ffices reopened in July of 2020." The circuit court concluded that the Tenth Revised Administrative Order did not apply to the petition because the statute of limitations began to run on December 22, 2021, *i.e.*, the mailing date of the letter notifying Petitioner of the Hearing Examiner's decision. The circuit court memorialized its oral ruling in a written order dated May 5, 2022. Petitioner timely appealed to the Appellate Court of Maryland.

## III. Proceedings in the Appellate Court of Maryland.

While this matter was pending on appeal, the Appellate Court certified the following question to this Court pursuant to Maryland Rule 8-304(a): "Does the 15-day extension apply to all cases whose statute of limitations and deadlines related to initiation expired

11

between March 16, 2020, and April 3, 2022?"[9] The Appellate Court observed that this Court had not evaluated the validity of the fifteen-day extension or the definition of "matters" in *Murphy*. The Appellate Court concluded that this Court was "in a unique position of interpreting its own orders[.]" This Court granted *certiorari* regarding "the entire action[.]" Md. Rule 8-304(c)(3).

## STANDARD OF REVIEW

This Court "review[s] the grant of a motion to dismiss to determine 'whether the [circuit] court was legally correct.'" *Hancock v. Mayor & City Council of Balt.*, 480 Md. 588, 603, 281 A.3d 186, 195 (2022) (quoting *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 350, 214 A.3d 521, 527 (2019)). In its *de novo* review, this Court assumes the truth of all well-pleaded facts in the complaint and all reasonable inferences drawn therefrom. *Wheeling v. Selene Fin. LP*, 473 Md. 356, 374–75, 250 A.3d 197, 207–08 (2021). The circuit court may only grant a motion to dismiss "where the allegations presented do not state a cause of action." *Id.* at 374, 250 A.3d at 207 (citation omitted).

## PARTIES' CONTENTIONS

I.      **Petitioner's Arguments.**

Petitioner construes the Tenth Revised Administrative Order as follows:

Section (d) handles matters whose statutes of limitations were affected by the closure of the [c]ourt[s], and Section (e) provides for matters whose statutes expire during the emergency operations generally, including the limited period when the [c]ourts were closed in Section (d). Thus, Section (f) applies broadly to the "matters" defined by Section (e).

---

[9] "At any time before issuance of a mandate, the Appellate Court [of Maryland] or the panel of that [c]ourt to which the action has been assigned may certify a question of law or the entire action to the Supreme Court [of Maryland]." Md. Rule 8-304(a).

Petitioner maintains that the Judiciary's "emergency operations" did not conclude until April 3, 2022. In Petitioner's view, his Petition for Judicial Review fell within the ambit of Section (e)'s definition of "matters," which were "matter[s] for which the filing deadline was extended by an additional 15 days." Petitioner emphasizes the language in Section (e) that defines "matters" as claims with deadlines that would have elapsed between March 16, 2020 and April 3, 2022, rather than claims that were affected by the closure. Petitioner asserts that former Chief Judge Barbera could have limited the scope of the fifteen-day extension to deadlines that were tolled during the closure, but elected not to do so. Petitioner contends that it is immaterial whether the footnote example to Section (f) was limited to a case that was tolled during the closure, because the Order does not expressly foreclose the extension from applying to future claims.

Petitioner claims that the preamble supports a broader application of the fifteen-day extension because it recognizes the impact of the COVID-19 pandemic upon the ability of litigants to meet their filing deadlines. Based on the preamble, Petitioner concludes that "the intent of the [administrative tolling] [o]rders [was] clearly to maximize the flexibility of the [c]ourts and statutes of limitations during the COVID-19 *emergency*, and not merely those portions of the emergency when the [c]ourts were closed." Petitioner asserts that he experienced difficulties during the surge of the COVID-19 Omicron Variant between December 2021 and January 2022. Lastly, Petitioner argues that this Court did not address the issue at bar in *Murphy* and that this Court's "passing reference to the" fifteen-day extension in that case was dicta.

## II. Respondent's Arguments.

In Respondent's view, the fifteen-day extension was limited to the four-month closure between March 16, 2020 and July 20, 2020 because the Tenth Revised Administrative Order expressly refers "to the reopening of the courts to the public in the same paragraph that it discusses extending the deadline[s.]" Respondent notes that the limitations period for the petition did not accrue until December 22, 2021, which occurred after the closure of the clerks' offices. Respondent argues that the footnote example in Section (f) was limited to a case affected by the closure, and the Order does not expressly provide that the fifteen-day extension would apply to claims following the closure. Respondent contends that the former Chief Judge could have stated that the fifteen-day extension applied to all claims through April 3, 2022, but elected not to do so. Respondent claims that "th[is] Court's own description of the 15-day time period [in *Murphy*] inextricably ties [the extension] to the tolling period, which was the period of the [c]ourt closure." Respondent frames Petitioner's focus on the preamble as a request for this Court to equitably extend the statute of limitations.

Both parties agree that the circuit court lacked authority to extend the deadline of the Petition for Judicial Review under Maryland Rule 7-203(a). *Colao v. Cnty. Council of Prince George's Cnty.*, 346 Md. 342, 362–63, 697 A.2d 96, 106 (1997) (holding that the thirty-day deadline pursuant to Maryland Rule 7-203(a) is not subject to "any implied or equitable exception[.]" (cleaned up)). We agree. Therefore, the success of Petitioner's contentions depends upon whether the fifteen-day extension applied narrowly to deadlines

14

that were tolled during the four-month closure or broadly to deadlines that would have elapsed through April 3, 2022.

## DISPOSITION

In answer to the question posed by the Appellate Court, the fifteen-day extension applied only to cases with deadlines that were suspended during the closure of the court clerks' offices between March 16, 2020 and July 20, 2020.  The judgment of the Circuit Court for Baltimore City is affirmed.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE.  JUDGMENT AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No. 24-C-22-000458
Argued: May 4, 2023

IN THE SUPREME COURT

OF MARYLAND*

Misc. No. 24

September Term, 2022

IN THE MATTER OF THE PETITION
OF KERN HOSEIN

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Concurring Opinion by Fader, C.J.,
which Booth and Gould, JJ., join.

Filed: August 14, 2023

* During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland.  The name change took effect on December 14, 2022.

Petitioner's exclusive focus on the Tenth Revised Administrative Order to determine the scope of the 15-day extension is misplaced. That order merely references an extension of "filing deadlines to initiate matters . . . by an additional 15 days" that had been accomplished "by previous Order." *Tenth Rev. Admin. Order* at 4. By its plain terms, the Tenth Revised Administrative Order does not establish the 15-day extension, nor does it purport to alter, expand, extend, or affect that previously established 15-day extension in any way. To determine the scope of the 15-day extension, our focus should be on the orders that established it. When we do that, the answer to the Appellate Court's inquiry is plain: the extension applied only to deadlines that were tolled during the period in which court clerks' offices were closed.

At the outset, it is worth a brief recitation of the evolution of what became the "additional" 15-day extension through the 17 administrative orders that were issued on the subject of "emergency tolling or suspension of statutes of limitations and statutory and rules deadlines related to the initiation of matters[.]"[1] That evolution occurred in three

---

[1] All 17 orders in the series identify in their titles that they pertain to the subject of the "emergency tolling or suspension of statutes of limitations and statutory and rules deadlines related to the initiation of matters and certain statutory and rules deadlines in pending matters." The titles of the orders differ only in what precedes the identification of that subject, as follows:

- Administrative Order (issued April 3, 2020), archived at: https://perma.cc/568M-28TV
- Amended Administrative Order (issued April 8, 2020), archived at: https://perma.cc/6TFV-KXT5
- Amended Administrative Order Clarifying (issued April 24, 2020), archived at: https://perma.cc/87KX-Y957
- Amended Administrative Order Further Clarifying (issued May 4, 2020), archived at: https://perma.cc/9T6H-VPFY

phases. The first phase consists of the four administrative orders beginning with the

original Administrative Order, which was issued on April 3, 2020, and carrying through

the Amended Order Further Clarifying, which was issued on May 4, 2020. Each of those

orders provides for the tolling of statutes of limitations and other deadlines related to the

initiation of matters beginning on March 16, 2020 and lasting "the number of days that the

courts are closed to the public due to the COVID-19 emergency by order of the Chief Judge

- Revised Administrative Order (issued May 22, 2020), archived at: https://perma.cc/58SR-UWEH
- Second Revised Administrative Order (issued June 3, 2020), archived at: https://perma.cc/H9N3-BJYY
- Third Revised Administrative Order (issued October 2, 2020), archived at: https://perma.cc/PR6S-SCN5
- Fourth Revised Administrative Order (issued November 12, 2020), archived at: https://perma.cc/JH9Y-SPE8
- Fifth Revised Administrative Order (issued November 24, 2020), archived at: https://perma.cc/NQY3-LQMQ
- Sixth Revised Administrative Order (issued December 22, 2020), archived at: https://perma.cc/F48Q-6Z59
- Seventh Revised Administrative Order (issued February 2, 2021), archived at: https://perma.cc/77JC-EK5V
- Eighth Revised Administrative Order (issued February 16, 2021), archived at: https://perma.cc/T829-7JDS
- Ninth Revised Administrative Order (issued May 24, 2021), archived at: https://perma.cc/X7RB-5MW3
- Tenth Revised Administrative Order (issued August 6, 2021), archived at: https://perma.cc/5RFY-XAFV
- Eleventh Revised Administrative Order (issued February 18, 2022), archived at: https://perma.cc/76NJ-LGLS
- Twelfth Revised Administrative Order (issued March 1, 2022), archived at: https://perma.cc/VDP4-8N4X
- Final Administrative Order (issued March 28, 2022), archived at: https://perma.cc/CTL2-JCAV

For clarity and ease of reference, I will refer to the orders in the series by these short titles.

of the Court of Appeals[.]" *E.g.*, *Admin. Order* at 1-2. Each order then states that "[s]uch filing deadlines further shall be extended by a period to be described in an order by the Chief Judge of the Court of Appeals terminating the COVID-19 emergency period." *E.g.*, *id.*

The second phase consists of the three administrative orders beginning with the Revised Administrative Order, issued May 22, 2020, and carrying through the Third Revised Administrative Order, issued October 2, 2020. The Revised Administrative Order was the first that identified July 20, 2020 as the date on which clerks' offices would be reopened and established that as the end date of the tolling period. *Rev. Admin. Order* at 2-3. Each of those second-phase orders provides for the tolling of statutes of limitations and other deadlines related to the initiation of matters from March 16, 2020 through July 20, 2020. *E.g.*, *id.* at 2. Each order then provides that "[w]ith the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days[.]" *E.g.*, *id.* at 3. In each order, that statement is followed by the following footnote:

> For example, if two days remained for the filing of a new matter on March 15, 2020, then two days would have remained upon the reopening of the offices of the clerks of court to the public on July 20, 2020. With the additional fifteen days, seventeen days would be left for a timely filing, beginning July 20, 2020.

*E.g.*, *id.* at 3 n.1.

The third and final phase of the evolution of the orders consists of the remaining ten orders. Those begin with the Fourth Revised Administrative Order, issued on November 12, 2020, and carry through the Final Administrative Order, issued on March 28, 2022.

Each of those orders provides for the tolling of statutes of limitations and other deadlines related to the initiation of matters from March 16, 2020 through July 20, 2020. *E.g.*, *Fourth Rev. Admin. Order* at 2-3. Each order then provides that "[w]ith the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days[,]"[2] followed by the identical footnote quoted above.[3] *E.g.*, *id.* at 3 & n.1.

With that background, I turn to section (f) of the Tenth Revised Administrative Order, which is the order that was in place when Mr. Hosein's time to seek judicial review ran. *Tenth Rev. Admin. Order* at 4. Section (f) provides: "With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days[.]" *Id.* That language is particularly notable here for two reasons.

First, section (f) does not itself purport to impose, authorize, establish, define, extend, expand, or alter in any way a 15-day extension. Instead, it references a 15-day

---

[2] In the Fourth Revised Administrative Order, an additional comma is placed between "having been" and "extended by previous Order." *Fourth Rev. Admin. Order* at 3. That appears to have been a typographical error that does not affect the meaning of the provision. Beginning with the Fifth Revised Administrative Order, issued on November 24, 2020, the remaining third-phase orders also defined "matters" for purposes of the tolling of deadlines, as "*nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of the COVID-19 emergency operations in the Judiciary as determined by the Chief Judge of the Court of Appeals." *Fifth Rev. Admin. Order* at 3. I discuss that addition further below.

[3] The Final Administrative order contains a slight difference that is immaterial to this dispute. *Final Admin. Order* at 3.

4

extension that was already imposed "by previous Order." *Id.* To interpret the scope of that extension, therefore, we should look to the order(s) that established it, not a later order that merely referenced it.[4] The three orders containing language purporting to establish the 15-day extension, which comprise the second phase discussed above, are the Revised Administrative Order, the Second Revised Administrative Order, and the Third Revised Administrative Order. The relevant operative paragraphs in all three orders are:

> (a) By previous Order, pursuant to Maryland Rule 16-1003(a)(7), all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, were tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

> (b) By this Order, those same deadlines remain tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

> (c) Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove his, her, its, or their practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Administrative Order provides; and

---

[4] In her separate concurrence, Justice Hotten points out that each of the various administrative orders in the series rescinded the prior orders. Concurring Op. of Hotten, J. at 1-2, 4-5, & 9 n.3. She concludes from that fact that, by the time of the Tenth Revised Administrative Order, the earlier orders that actually established the 15-day extension were rescinded and could no longer be the source of the extension. *Id.* at 4-5. But if she is correct, then there would be no 15-day extension at all, because the Tenth Revised Administrative Order plainly does not establish one. No party argues for that result, presumably because the Tenth Revised Administrative Order also treats the previously established 15-day extension as continuing in effect. That, however, is no reason to look to the Tenth Revised Administrative Order, which merely references the previously established extension, to import ambiguity that does not exist in the orders that established and defined the extension.

(d) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days that the offices of the clerks of court were closed to the public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of that matter; and

(e) With the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days; and

(f) Any such filings made within the period described in (d) and (e) shall relate back to the day before the deadline would have expired had it not been tolled or suspended[.]

*E.g.*, *Rev. Admin. Order* at 2-3 (footnote omitted).

In sections (a), (b), and (d) of those orders, Chief Judge Barbera established a tolling period for deadlines for the initiation of matters that began on March 16, 2020 and ended with the reopening of the court clerks' offices on July 20, 2020. *E.g.*, *id.* at 2. In section (c) of those orders, Chief Judge Barbera provided that the tolling period applied to all parties in all matters, without the need for an individualized showing of a practical inability to comply with a deadline. *E.g.*, *id.* And in section (e), Chief Judge Barbera established the 15-day extension, expressly connecting it to the reopening of the court clerks' offices that constituted the end of the tolling period: "With the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days[.]" *E.g.*, *id.* at 3. The operative provisions of the orders that established the 15-day extension thus link it to matters with deadlines that had been tolled until the reopening of the clerks' offices. There is no ambiguity.[5] And because the

---

[5] Mr. Hosein's interpretation of section (f) effectively renders it a non sequitur, with an initial phrase—which references the reopening of the clerks' offices—that is untethered

6

Tenth Revised Administrative Order does not purport to alter the scope of the 15-day extension in any way, but instead simply refers to its existence and imposition "by previous Order," it cannot have introduced any ambiguity into it. The 15-day extension thus unambiguously applies only to matters that had previously been tolled.

Second, the Tenth Revised Administrative Order describes the earlier orders as having added "an additional 15 days" to "filing deadlines" that had previously "been extended." *Tenth Rev. Admin. Order* at 4. However, the only extension of deadlines that had previously been accomplished by this series of administrative orders was the tolling of deadlines from March 16 through July 20, 2020, which is referred to in sections (a), (b), and (d) of the Tenth Revised Administrative Order (and in those same sections of the orders in the series going back to the original Revised Administrative Order). *E.g.*, *id.* at 2-3. Consistent with the plain language of the prior orders, the plain language of section (f) thus unambiguously refers to an *additional* extension of the previously tolled deadlines, not a

from its concluding phrase—which he interprets to establish a freestanding deadline extension unconnected to the tolling period. The Dissent goes one step further, stating that, "as a matter of logic, Chief Judge Barbera must have implemented the 15-day extension for reasons other than the closure of the clerk's offices, because the extension was only going to become effective after the clerk's offices reopened to the public." Dissenting Op. of Biran, J. at 10. The Dissent thus considers it logical to interpret the 15-day extension enacted in the second half of the one-sentence section (e) as necessarily *un*related to the first half of that same sentence. I see neither grammatical coherence nor logic in that conclusion. It is far more likely that the two halves of the sentence are related, and that the purpose of the 15-day extension was to create a buffer period so that litigants were not caught off guard by the resumption of the running of statutes of limitations and other deadlines. That purpose, which is also reflected in the footnote attached to section (e) in all relevant orders, may have become less relevant as the pandemic wore on, but it is safe to say that on May 22, 2020, when the 15-day extension was put in place, no one had any idea how long emergency operations would continue.

7

new extension of deadlines that were not previously subject to tolling. For that reason, as well, the 15-day extension referred to in the Tenth Revised Administrative Order unambiguously applies only to matters that had previously been tolled.

Justice Hotten finds ambiguity in section (f) of the Tenth Revised Administrative Order, concluding that it "is susceptible to two reasonable interpretations: (1) once the clerks' offices reopened, *all* filing deadlines through April 3, 2022 received a fifteen-day extension; or (2) only the filing deadlines that were suspended during the court closure received a fifteen-day extension." Concurring Op. of Hotten, J. at 8. The Dissent agrees that section (f) is ambiguous. Dissenting Op. of Biran, J. at 2, 5-13. For the reasons already discussed, I reach the opposite conclusion. Nevertheless, I agree with Justice Hotten that *if* section (f) were ambiguous, "other indicia" of Chief Judge Barbera's intent overwhelmingly support the interpretation that the 15-day extension applied only to deadlines that were tolled between March 16 and July 20, 2020. *Id.* at 9-30. To that point, I would emphasize three things:

- First, the 15-day extension was initially added in the original Revised Administrative Order, issued on May 22, 2020. That is the same order that first identified the date on which court clerks' offices would be reopened and tied the end of the tolling period to that reopening. There is no provision in any order that references a freestanding 15-day extension or that ties the extension to anything other than the cessation of the tolling period.

- Second, as Justice Hotten ably discusses, all other relevant sections of the Tenth Revised Administrative Order, as well as its predecessor and successor orders, were addressed to the tolling and suspension of deadlines. Concurring Op. of Hotten, J. at 9-13 & 16-17. Even without knowing the history of the evolution of those provisions, it would be illogical to read section (f) as a stand-alone provision creating an independent extension unconnected to what is identified as the subject matter of the order. Had that been Chief Judge Barbera's intent, it would have been much simpler to state

8

that all deadlines for the initiation of matters were extended by 15 days for the duration of the COVID-19 emergency.

- Third, the footnote example included in the final 13 administrative orders in the series reflects the intent that the "additional" 15-day extension apply only to deadlines that had been subject to tolling. Had Chief Judge Barbera intended to extend all deadlines, the example would have been unnecessary.

Mr. Hosein's argument relies in part on two portions of the Tenth Revised Administrative Order. Even were that the appropriate order to be examined to define the scope of the extension, neither section provides the support he claims. First, Mr. Hosein emphasizes section (e), which provides:

> For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "matters" are, *nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of COVID-19 emergency operations in the Judiciary as determined by the Chief Judge of the Court of Appeals[.]

*Tenth Rev. Admin. Order* at 3. Mr. Hosein contends that by defining "matters" in section (e) to include all those for which a limitations period or deadline would have expired while the Judiciary was in emergency operations, Chief Judge Barbera intended the 15-day extension referenced in section (f) to apply to all those matters. I disagree.

As an initial matter, section (e) expressly states that it is defining "matters" for a specific purpose: "tolling of statutes of limitations and other deadlines related to the initiation of matters." That tolling began on March 16, 2020 and ended on July 20, 2020. Mr. Hosein's interpretation requires that we read the definition to additionally apply for the different and broader purpose of creating a freestanding extension of all statutes of limitations and deadlines running during the entire emergency period, regardless of

9

whether they were subject to tolling.  Mr. Hosein's interpretation thus runs headlong into the provision's express statement of purpose.

Moreover, the paragraph that appears as section (e) in the Tenth Revised Administrative Order first appeared in the Fifth Revised Administrative Order.  The last administrative order that purported to establish the "additional" 15-day extension, as opposed to referring to it as having previously been established "by previous Order," was the Third Revised Administrative Order.  Mr. Hosein's argument would require us to conclude that it was Chief Judge Barbera's intent to employ a definition of "matters" that she expressly identified as serving a limited, different purpose to also retroactively expand the substance of an extension that had been established in prior orders, and that she intended to do so indirectly and without comment or acknowledgment.[6]  Instead, the stated and apparent purpose of section (e) is to clarify that the benefit of the tolling period was not

---

[6] Because section (e), defining "matters," did not become part of the administrative orders until November 2020, its application was made *nunc pro tunc* to the beginning of the emergency period, March 16, 2020.  Notably, however, it was made *nunc pro tunc* to that date for the purpose expressly identified in section (e):  tolling.  There is no indication that it was intended to alter the scope or applicability of the "additional" 15-day extension beyond the tolled matters to which that extension applied.  In an effort to draw that connection, the Dissent posits a creative interpretation of the phrase "For the purposes of tolling statutes of limitations and other deadlines related to the initiation of matters" as possibly referring to (1) the tolling of statutes of limitations and, separately, (2) other deadlines related to the initiation of matters.  Dissenting Op. of Biran, J. at 12-13.  In doing so, the Dissent would seemingly break the connection between tolling and all deadlines for initiating matters other than statutes of limitations—in contrast to their treatment throughout the remainder of the orders—for no apparent purpose other than adding a 15-day extension in the following section.  Regardless of whether that acontextual interpretation could pass muster if the isolated language were analyzed in a vacuum—and I do not think it could—it cannot survive when viewed in context of the other provisions of the orders.

10

limited to those matters for which a statute of limitations or deadline would have expired during the tolling period itself. Rather, it applied to all matters for which such a limitations period or deadline would have expired during the period of emergency operations.[7] Section (e) simply cannot bear the weight Mr. Hosein places on it.

Second, Mr. Hosein relies on the following two paragraphs included in the preamble to the Tenth Revised Administrative Order:

> WHEREAS, The impact of the restrictions required to respond to the COVID-19 pandemic has had a widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses, with the impact falling hardest upon those who are impoverished; and

> WHEREAS, The detrimental impact of the COVID-19 pandemic is so widespread as to have created a general and pervasive practical inability for certain deadlines to be met[.]

*Tenth Rev. Admin. Order* at 1-2. Mr. Hosein interprets the inclusion of those paragraphs after clerks' offices were reopened to the public to reflect an acknowledgment that "even though the Courts were open, its emergency operations were necessary due to the 'detrimental impact of the COVID-19 pandemic' and its effects not only on the Courts, but on the public."

However, those two paragraphs of the preamble were introduced in the Amended Administrative Order Clarifying, which was issued on April 24, 2020. That same order

---

[7] Thus, for example, a claim with a three-year statute of limitations that would have expired in April 2021 was to receive the benefit of tolling just as a claim with a similar limitations period that would have expired in April 2020.

11

also introduced, for the first time, the following operative paragraph, lettered (b) in that order and, eventually, (c) in most succeeding orders, including the Tenth:

> Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove his, her, its, or their practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Administrative Order provides[.]

*E.g.*, *Amended Admin. Order Clarifying* at 2. The purpose of the preamble paragraphs was therefore to support the new operative paragraph clarifying that *the tolling period* applied to all parties in all matters, without any need for an individualized showing of a practical inability to comply with a deadline. Notably, the inclusion of those preamble and operative paragraphs came: (1) two orders in sequence before the order that first included the "additional" 15-day extension; and (2) five orders in sequence before the order that added the definition of "matters" in new paragraph (e). In context, therefore, the continued inclusion of the same preamble paragraphs in subsequent orders simply supported the continued inclusion of the same operative paragraph in subsequent orders.

In sum, the relevant provisions of the relevant administrative orders are not ambiguous. The "additional" 15-day extension was added to the tolling period—the only thing it could possibly have been additional to—initially by the Revised Administrative Order. After the Third Revised Administrative Order, none of the subsequent orders, including the Tenth, purported to alter, expand, extend, or amend that "additional" extension into a freestanding extension applicable to all limitations periods and deadlines, regardless of whether they had been tolled while court clerks' offices were closed to the

12

public. For those reasons, I concur with the Per Curiam opinion that: (1) the answer to the question posed by the Appellate Court of Maryland is that "the fifteen-day extension applied only to cases with deadlines that were suspended during the closure of the court clerks' offices between March 16, 2020 and July 20, 2020"; and (2) the judgment of the Circuit Court for Baltimore City is affirmed.

Justices Booth and Gould advise that they join this concurring opinion.

Circuit Court for Baltimore City
Case No. 24-C-22-000458
Argued: May 4, 2023

IN THE SUPREME COURT

OF MARYLAND*

Misc. No. 24

September Term, 2022

---

IN THE MATTER OF THE PETITION
OF KERN HOSEIN

---

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

---

Concurring Opinion by Hotten, J.

---

Filed: August 14, 2023

---

* During the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Respectfully, I concur with the Per Curiam opinion's conclusion regarding the fifteen-day extension enshrined in Section (f) of the "Tenth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters" ("Tenth Revised Administrative Order" or "Order").[1] *Tenth Revised Admin. Ord.* (Aug., 6, 2021), archived at: https://perma.cc/5RFY-XAFV.  I agree that the fifteen-day extension only applied to filing deadlines that were tolled during the closure of the clerks' offices between March 16, 2020 and July 20, 2020.  I write separately because, in my view, the scope of the fifteen-day extension under the Tenth Revised Administrative Order is ambiguous.

Section (f) does not purport to implement the fifteen-day extension; rather it implicitly serves in an advisory capacity because it indicates that a previous order effectuated that extension.  The reference to a previous order belies the fact that each successive administrative tolling order expressly rescinded its predecessor.  Therefore, the scope of Section (f) must be apparent from the plain language of the only administrative tolling order in effect during the relevant time, *i.e.*, the Tenth Revised Administrative Order.  Otherwise, Section (f) is necessarily ambiguous.  Section (f) does not explain whether the fifteen-day extension, as implemented by a previous order, remains in effect.  Section (f) also does not identify the claims to which the fifteen-day extension applied.  None of the other operative provisions clarify the scope of the fifteen-day extension.  The

---

[1] Subsequent references and citations to the Chief Judge's administrative tolling orders will follow a similar shorthand.

only clue to Section (f)'s true meaning lies in its reference to a rescinded order. As with the evaluation of any extrinsic indicia of intent, such as superseded statutes, the evaluation of rescinded orders falls within the domain of an ambiguity analysis. Although I conclude that Chief Judge Mary Ellen Barbera[2] intended for the fifteen-day extension to narrowly apply to claims that were tolled during the closure of the clerks' offices, that conclusion does not rely solely on the Tenth Revised Administrative Order. Instead, that conclusion requires evaluating extrinsic indicia to clarify the ambiguity of the fifteen-day extension.

## ANALYSIS

I. **The Tenth Revised Administrative Order is Ambiguous Regarding the Scope of the Fifteen-Day Extension.**

This Court applies canons of statutory construction when interpreting the Maryland Rules, including administrative orders issued pursuant to those rules. *See Lopez-Villa v. State*, 478 Md. 1, 10, 271 A.3d 1228, 1234 (2022); *English v. Quinn*, 76 Va. App. 80, 85–86, 880 S.E.2d 35, 38 (2022) (noting that "[s]tatutory construction principles guide [the] interpretation of the Supreme Court[ of Virginia's administrative tolling] orders." (citation omitted)); *Shaw's Supermarkets, Inc. v. Melendez*, 488 Mass. 338, 341, 173 N.E.3d 356, 360 (2021) (applying "basic principles of statutory construction[]" when interpreting the Supreme Judicial Court of Massachusetts' administrative tolling orders). To ascertain the Chief Judge's intent, this Court "begin[s] with the plain language of the" administrative order. *Lopez-Villa*, 478 Md. at 11, 271 A.3d at 1234 (citation omitted). This Court "need

---

[2] The change from "Chief Judge" to "Chief Justice" or from "Court of Appeals of Maryland" to "Supreme Court of Maryland" had not occurred during all relevant times. Accordingly, I will use the former titles throughout this opinion where appropriate.

2

not look beyond the [administrative order's] terms to inform [its] analysis[,]" where the "language is clear and unambiguous[.]" *Id.*, 271 A.3d at 1234 (cleaned up). This Court evaluates the administrative order "as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless[,] or nugatory." *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 179, 286 A.3d 1, 12 (2022) (cleaned up). An administrative order is ambiguous when its words are "subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger [] scheme[.]" *Lockshin v. Semsker*, 412 Md. 257, 276, 987 A.2d 18, 29 (2010) (citations omitted).

Where an administrative order is ambiguous, this Court will search for indicia of the Chief Judge's intent by considering prior administrative orders to reconstruct the "history" of the order at issue, as well as "other relevant sources intrinsic and extrinsic to the" Chief Judge's deliberative process. *Id.*, 987 A.2d at 29. This Court will also consider "the structure of the [order], how it relates to other [orders], its general purpose, and the relative rationality and legal effect of various competing constructions." *Id.*, 987 A.2d at 29 (citations omitted). Language contained in an administrative order's preamble and title "may be considered in conjunction with the body of the [order] to determine its intent, purpose and effect[.]" *Clarke v. Cnty. Comm'rs for Carroll Cnty.*, 270 Md. 343, 349, 311 A.2d 417, 421 (1973) (citations omitted). "To the extent that the preamble collides with the plain and unambiguous language of the [administrative order], the latter must prevail." *Id.*, 311 A.2d at 421.

In the case at bar, Kern Hosein ("Petitioner") argues that the fifteen-day extension applied broadly to all claims with filing deadlines that would have expired during the COVID-19 emergency period between March 16, 2020 and April 3, 2022. The Fire and Police Employees' Retirement System for the City of Baltimore ("Respondent") contends that the extension applied narrowly to claims that were tolled during the closure of the clerks' offices between March 16, 2020 and July 20, 2020. Both parties assert that the plain language of the Tenth Revised Administrative Order is dispositive in this case. I disagree. The plain language of the fifteen-day extension is ambiguous. Section (f) states: "With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days[.]" *Tenth Revised Admin. Ord.* at 4 (footnote omitted). Section (f) does not discuss the relationship between the clerks' offices reopening and the application of the extension. Section (f) also does not define the scope of the extension. It merely states that a "previous [o]rder[]" extended "the filing deadlines to initiate matters[.]" *Id.*

Section (f)'s reference to a "previous [o]rder[]" suggests that the Tenth Revised Administrative Order itself does not implement the fifteen-day extension; rather, it was a "previous [o]rder[]" that did so. *Id.* Section (f) does not indicate whether the "previous [o]rder['s]" extension remained in effect. *Id.* Although Section (f) invites this Court to consider the scope of the "previous [o]rder," that invitation undermines the fact that the Tenth Revised Administrative Order, as with all successive administrative tolling orders, had expressly rescinded its predecessor. *Id.* at 4–5; *see Lockshin*, 412 Md. at 275, 987 A.2d at 29 ("[This Court] . . . do[es] not read statutory language in a vacuum, nor do[es] [it]

4

confine strictly [its] interpretation of a statute's plain language to the isolated section alone." (citations omitted)). By voiding their predecessors, the administrative tolling orders exclusively operated under the terms of the specific order that was in effect at any given time, which, in this case, was the Tenth Revised Administrative Order. Therefore, the scope of Section (f) must be apparent from the plain text of the Tenth Revised Administrative Order, or it is necessarily ambiguous. *See id.* at 276, 987 A.2d at 29 (noting that language that appears "clear and unambiguous when viewed in isolation[]" may "become ambiguous when read as part of a larger [] scheme[.]" (citations omitted)).

The footnote in Section (f) provides no clarity. Although the footnote describes a case that was affected by the closure, the omission of claims with deadlines following the closure does not foreclose a broader extension. *See Tenth Revised Admin. Ord.* at 4 n.1. On one hand, the footnote may illustrate the only types of claims that Chief Judge Barbera had envisioned would receive an extension. On the other hand, the footnote may simply illustrate the most complex and salient application of the fifteen-day extension for litigants who anticipated the clerks' offices reopening.

The operative language in the Tenth Revised Administrative Order also fails to conclusively establish the meaning of Section (f). Section (a) explains that a prior order had tolled all filing deadlines during the closure. *Id.* at 2–3. Section (b) maintained that tolling period. *Id.* at 3. Section (c) excuses parties from establishing their "practical inability to comply" with a tolled deadline. *Id.* Section (d) defines the tolling period as the court closure between March 16, 2020 and July 20, 2020. *Id.* Sections (a) through (d)

do not discuss the fifteen-day extension or provide guidance regarding its scope.  *Id.* at 2–3.  Section (e) warrants further discussion because Petitioner relies on its language.

From the outset, Section (e) states that it exists "[f]or the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters[.]"  *Id.* at 3.  The gerund "tolling" combined with the preposition "of" indicate that the action of "tolling" pertains to the terms that follow.  *Id.*  Generally, the term "and" "is a conjunction meaning '[t]ogether with or along with; in addition to; as well as[; u]sed to connect words, phrases, or clauses that have the same grammatical function in construction."  *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 642, 187 A.3d 686, 692 (2018) (citation omitted).  Accordingly, the use of "and" in the prefatory clause connects "statutes of limitations" with "other deadlines related to the initiation of matters[.]"  *Tenth Revised Admin. Ord.* at 3.  Taken together, the plain language of the prefatory clause clarifies that the operative language addresses the dual "purposes of tolling of statutes of limitations[,]" as well as the "tolling of . . . other deadlines related to the initiation of matters[.]"  *Id.*

Section (e) then defines "matters" retroactively as claims with filing deadlines that would have elapsed "between March 16, 2020, through the termination date of COVID-19 emergency operations in the Judiciary[.]"  *Id.*  COVID-19 emergency operations in the Judiciary extended beyond the emergency tolling period, but that alone does not clarify the scope of the fifteen-day extension.  *See Final Admin. Ord.* at 3 (Mar., 28, 2022), archived at: https://perma.cc/CTL2-JCAV (defining the "COVID-19 emergency" period as March 16, 2020 through April 3, 2022).  Contrary to Petitioner's assertions, Section (e) does not suggest that the definition of "matters" is related to the application of the fifteen-day

6

extension.  Like the other operative provisions, Section (e) does not discuss the fifteen-day extension at all.  Instead, Section (e) serves a clarifying function regarding the scope of the "matters" subject to the "tolling of statutes of limitations and other deadlines related to the initiation of matters[.]"  *Tenth Revised Admin. Ord.* at 2–3.  The only type of tolling discussed in the Tenth Revised Administrative Order involved the closure of the clerks' offices.

Section (g) is similarly unhelpful.  It provides that "[a]ny such filings made within the period described in [Sections] (d) and (e) shall relate back to the day before the deadline would have expired *had it not been tolled or suspended*[.]"  *Id.* at 4 (emphasis added).  The phrase "[a]ny such filings" refers to the initiation of matters, as described in the Order.  *Id.* The "period described in [Sections] (d) and (e)" concern two different timeframes: (1) the four-month closure of the clerks' offices under Section (d); and (2) the entire COVID-19 emergency period under Section (e).  *Id.* at 3–4.  Although these two periods initially suggest an ambiguity in Section (g), the provision proceeds to connect its operation to cases that were "tolled or suspended[.]"  *Id.* at 4.  Section (g) does not mention deadlines that were "extended[,]" which limits any relation-back to cases that were "tolled or suspended[]" during the four-month closure of the clerks' offices.  *Id.* at 4.  Regardless of the scope of Section (g), nothing in its language clarifies the operation of Section (f).

Sections (a) through (e), as well as (g), all concern the emergency tolling period, which Section (d) defines as the closure of the clerks' offices between March 16, 2020 through July 20, 2020.  *Id.* at 3.  This suggests that the operation of Section (f) is limited to that period.  Since the four-month closure had long passed when the Tenth Revised

7

Administrative Order was issued, that would mean Section (f) was inoperative and served in an advisory capacity during all relevant times in this matter. That interpretation, however, belies the fact that Section (f) was included in the Tenth Revised Administrative Order in the first place. The inclusion of Section (f) implies that the Chief Judge had intended for that provision to have *some* effect. Petitioner highlights the tension between an inoperative fifteen-day extension and its inclusion in the Order:

> [N]o further tolling orders would be necessary after the [c]lerks of [c]ourts' offices reopened on July 20, 2020, because all conceivable limitations periods that were tolled by the original orders would have completed running despite the extended time. Yet the [Chief Judge] ha[d] issued at least nine additional orders on emergency tolling of statutes of limitations prior to the Tenth [Revised Administrative] Order and continued to issue modified orders until March 2022.

In essence, the plain language of the Order does not, by itself, explain the scope of Section (f) or indicate whether the extension that the "previous [o]rder[]" had purportedly established remained in effect. *Tenth Revised Admin. Ord.* at 4. Absent clarification, Section (f) could be interpreted to be broad or narrow. Thus, Section (f) is susceptible to two reasonable interpretations: (1) once the clerks' offices reopened, *all* filing deadlines through April 3, 2022 received a fifteen-day extension; or (2) only the filing deadlines that were suspended during the court closure received a fifteen-day extension. The first interpretation would broaden the scope of the extension beyond the emergency tolling period, whereas the second interpretation would render Section (f) vestigial, despite its inclusion in the Tenth Revised Administrative Order. *See Elsberry*, 482 Md. at 179, 286 A.3d at 12 (noting that courts avoid constructions that either "add []or delete language" or render language "surplusage, superfluous, meaningless[,] or nugatory." (cleaned up)).

8

To resolve this ambiguity, this Court must consider other indicia of the Chief Judge's intent, including the preamble, title, other administrative tolling orders, relevant case law, and the Maryland Rules governing the administrative tolling orders. *See Lockshin*, 412 Md. at 276, 987 A.2d at 29 ("[A] court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." (citations omitted)).[3] It is clear upon reviewing those extrinsic sources that the fifteen-day extension applied only to claims that were tolled during the closure of the clerks' offices between March 16, 2020 and July 20, 2020.

**II.      Other Indicia Reveal that the Tenth Revised Administrative Order's Fifteen-day Extension Narrowly Applied to Deadlines that were Tolled During the Closure of the Clerks' Offices.**

A.      *The history of the fifteen-day extension.*

The Tenth Revised Administrative Order is a byproduct of several amendments, which "largely consisted of updated cross-references to other administrative orders

---

[3] This Court's modern trend when evaluating unambiguous language is to use legislative history to "check" any conclusions drawn from the plain language. *See Elsberry*, 482 Md. at 190, 286 A.3d at 19. Here, Section (f)'s reference to a "previous [o]rder[]" invites this Court to consider the history of the administrative tolling orders. *Tenth Revised Admin. Ord.* at 4. Those prior orders cannot be considered a part of a "scheme" of administrative tolling orders that would be subject to this Court's plain language analysis because each administrative tolling order expressly rescinded its predecessor. *See Elsberry*, 482 Md. at 180, 286 A.3d at 13 ("[T]he plain language must be viewed within the context of the statutory scheme to which it belongs[.]" (citation omitted)). Thus, evaluating prior orders to interpret a provision in the only operative order, *i.e.*, the Tenth Revised Administrative Order, is akin to considering legislative history and superseded statutes to resolve statutory ambiguity. *Id.* at 179, 286 A.3d at 12 ("This Court need not resort to other rules of statutory construction when the plain language of the statute unambiguously communicates the intent of the General Assembly." (citation omitted)).

9

concerning the COVID-19 pandemic." *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 362, 274 A.3d 412, 429 (2022) (footnote omitted). The context and history of an administrative order, including its relationship with earlier and subsequent orders, may "eliminate another version of [the Chief Judge's] intent alleged to be latent in the language." *See Blackstone v. Sharma*, 461 Md. 87, 113, 191 A.3d 1188, 1203 (2018) (citations omitted). Chief Judge Barbera alluded to the fifteen-day extension in the First Administrative Order, dated April 3, 2020. *See First Admin. Ord.* at 2 (Apr. 3, 2020), archived at: https://perma.cc/568M-28TV. That order tolled the filing deadlines for matters "by the number of days that the courts [were] closed to the public due to the COVID-19 emergency[.]" *Id.* Then, the order provided that "[s]uch deadlines further shall be extended by a period to be described in an order by the Chief Judge of the Court of Appeals terminating the COVID-19 emergency period[.]" *Id.* The phrase "[s]uch deadlines" is critical because it connects the operation of the extension directly to the deadlines that were tolled during the closure. *Id.* at 1. If the Chief Judge initially raised the extension in connection with the closure, then the implementation of that extension must be imbued with that same context, absent contrary language.

The Revised Administrative Order, dated May 22, 2020, introduced the following provision: "With the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days[.]" *Revised Admin. Ord.* at 3 (May 22, 2020), archived at: https://perma.cc/58SR-UWEH. This provision fulfilled the Chief Judge's promise to extend filing deadlines that were tolled during the closure. The extension appeared in anticipation of the clerks' offices

reopening, which clarifies why the footnote example pertained to a case that was affected by the tolling period. This history also clarifies the ambiguous language of Section (f) under the Tenth Revised Administrative Order. The Order states that "the filing deadlines to initiate matters ha[d] been extended *by previous Order*[.]" *Tenth Revised Admin. Order* at 4 (emphasis added). The Revised Administrative Order, as the progenitor of the fifteen-day extension, was the very order that Section (f) had referenced.

None of the orders subsequent to the Revised Administrative Order purported to modify the fifteen-day extension. Although the Fifth Revised Administrative Order introduced two substantive changes, they have no bearing on the scope of the fifteen-day extension. The Fifth Revised Administrative Order: (1) added Section (e), which defined "matters[,]" "[f]or the purposes of tolling[,]" as claims with deadlines that would have elapsed from March 16, 2020 through the end of COVID-19 emergency operations; and (2) altered the relation-back provision to refer to Section (e) instead of the fifteen-day extension. *Fifth Revised Admin. Ord.* at 3–4 (Nov. 24, 2020), archived at: https://perma.cc/NQY3-LQMQ. These changes are unremarkable.

Prior to the Fifth Revised Administrative Order, it was unclear whether the tolling period applied solely to filing deadlines that would have elapsed during the four-month closure or included filing deadlines that had accrued before the closure but would not expire until a later date. With the addition of Section (e), Chief Judge Barbera clarified that the tolling period applied to the latter. Section (g) accounts for matters with longer filing deadlines that happened to overlap with the four-month closure. That is why Section (g) references "deadline[s] [that] would have expired *had* [*they*] *not been tolled or*

11

*suspended*[.] *Id.* at 4 (emphasis added). That language remained unchanged under the Tenth Revised Administrative Order. *Tenth Revised Admin. Ord.* at 3–4. Critically, the Final Administrative Order clarified that the administrative tolling orders had applied to "matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through . . . April 3, 2022, *but for the tolling or suspension described in this Order*[.]" *Final Admin. Ord.* at 3 (emphasis added). In light of the Final Administrative Order, the application of Section (e), and by extension Section (g), cannot extend beyond claims that were affected by the tolling period.

Since none of the administrative tolling orders modified or extended the operation of the Revised Administrative Order, it follows that the fifteen-day extension had only applied to the deadlines that were tolled during the closure of the clerks' offices. The above history confirms that Section (f) was inoperative under the Tenth Revised Administrative Order and had merely advised the public that a prior order had extended filing deadlines. *Tenth Revised Admin. Ord.* at 4. This history further establishes that the fifteen-day extension from the Revised Administrative Order remained in effect under each successive order, notwithstanding the rescission of prior orders, including the "previous [o]rder[]" that initially implemented the extension. *Id.* Though this Court generally disfavors interpretations that render operative language "surplusage, superfluous, meaningless, or nugatory[,]" the advisory capacity of Section (f) "reconcile[s] and harmonize[s]" the tension between Section (f)'s reference to a "previous [o]rder[]" with the rescission of that order. *Id.*; *Wheeling v. Selene Fin. LP*, 473 Md. 356, 384, 250 A.3d 197, 213 (2021) (citation omitted); *Lockshin*, 412 Md. at 276, 987 A.2d at 29 (citation omitted).

12

Accordingly, the history of the fifteen-day extension reflects that the Chief Judge had contemplated a narrower extension.

B.    *The Maryland Judiciary's understanding of the fifteen-day extension and communications to the public.*

The Maryland Judiciary, of which Chief Judge Barbera was the administrative head during the relevant time period, communicated to the public that the fifteen-day extension only applied to claims affected by the closure. On the same day that Chief Judge Barbera issued the Revised Administrative Order, the Maryland Judiciary published a press release stating, in relevant part: "Filing deadlines to initiate matters will be extended by an additional 15 days, depending on the date in which a specific clerk's office opens." Press Release, Md. Jud. Gov't Rels. & Pub. Affs., *Maryland courts announce plan to gradually reopen through phased approach* (May, 22, 2020), archived at https://perma.cc/LT68-AV5H. The Maryland Judiciary's website published all of the Chief Judge's administrative tolling orders pursuant to Maryland Rule 16-1003(d). Md. Jud., *(COVID-19) Administrative Orders*, archived at: https://perma.cc/6XCF-AGMG; *see* Md. Rule 16-1003(d) (requiring "a copy of all directives and orders issued under [Maryland Rule 16-1003(a)] . . . [to be] posted on the Judiciary website."). The Maryland Judiciary website also maintained a "COVID-19 Timeline of Events[,]" which summarized the Chief Judge's administrative tolling orders as they were issued. Md. Jud., *COVID-19 Timeline of Events*, archived at https://perma.cc/VU32-3M4G. The timeline document summarized the Revised Administrative Order's new provisions as follows:

> [T]he number of days that the courts were closed to the public does not count against the time remaining for the initiation of a court matter. Filing

13

deadlines to initiate matters will be extended by *an additional 15 days, depending on the date in which a specific clerk's office opens*.

*Id.* at 6 (emphasis added). An extension that was intended to apply to all filings, regardless of whether they were impacted by the closure, would not "*depend*[] on the date in which a specific clerk's office opens." *Id.* (emphasis added).

The People's Law Library of Maryland ("PLL")[4] reflected the same interpretation of the extension. The PLL's website states that "[t]he deadlines [to initiate new matters were] tolled or suspended by the number of days the courts [were] closed plus an additional 15 days." *Filing Deadlines and Statutes of Limitation*, *COVID-19 Updates*, archived at: https://perma.cc/Z6UL-5CFR. Together, these public resources establish that the Maryland Judiciary conveyed to the public that the fifteen-day extension would only apply to deadlines that were suspended during the closure of the clerks' offices. These public communications are especially notable because Chief Judge Barbera expressly advised Maryland attorneys to rely upon the Maryland Judiciary's website for updates regarding the Judicial Branch's response to the COVID-19 pandemic. *A Message from the Chief Judge to Attorneys on COVID-19 | Maryland Judiciary | March 23, 2020*, archived at: https://perma.cc/W7MC-J7T9.

---

[4] PLL "is a legal information and self-help website maintained by the Thurgood Marshall State Law Library, a court-related agency of the Maryland Judiciary[.]" The People's Law Library of Maryland, *Introduction to the People's Law Library*, archived at: https://perma.cc/XP5G-ZDZT. The website is designed "to provide self-represented litigants in Maryland state courts information about the law, including summaries of the law[.]" *Id.*

14

Chief Judge Barbera was not only aware of the interpretation of her administrative tolling orders that the Maryland Judiciary was communicating to the public, but she also participated in disseminating it. On January 8, 2021, the Chief Judge "provided a further briefing to the Senate Judicial Proceedings Committee on 'the Courts and Criminal Justice System During the COVID-19 Pandemic.'" *Murphy*, 478 Md. at 363, 274 A.3d at 429. The meeting agenda included a copy of the COVID-19 Timeline of Events, which contained the above summary of the Revised Administrative Order. *Id.* at 363 n.34, 274 A.3d at 429 n.34 (citing Maryland Senate Judicial Proceedings Committee, Briefing on the Courts and Criminal Justice System During the COVID-19 Pandemic, Agenda (Jan. 8, 2021), archived at: https://perma.cc/DZP4-5X4H).

In alignment with these statements to the public, the Chief Judge continued to promulgate updated administrative tolling orders that maintained the same language. *See Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 693, 69 A.3d 1149, 1157 (2013) (explaining that inaction is persuasive evidence of intent in some circumstances). This Court should hesitate to retract an interpretation of the fifteen-day extension that the Maryland Judiciary had communicated to the public. Assuming, *arguendo*, there was no evidence the Chief Judge was aware of the Maryland Judiciary's communications to the public, this Court must presume that she exercised her emergency powers with "full knowledge and information" regarding her "prior and existing" administrative tolling orders, as well as the Maryland Judiciary's publications. *Collins v. State*, 383 Md. 684, 693, 861 A.2d 727, 732 (2004) (citation omitted).

15

C.      *The Order's title mentions "[e]mergency [t]olling[.]"*

The Tenth Revised Administrative Order's title reflects that any relief under the Order pertained to "[e]mergency [t]olling[,]" which was limited to the four-month closure. Just as "a bill's title and function paragraphs are indicative of legislative intent[,]" an administrative order's title is indicative of its drafter's intent. *See Elsberry*, 482 Md. at 187, 286 A.3d at 17 (cleaned up). The Order is entitled "Tenth Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters[.]" *Tenth Revised Admin. Ord.* at 1. The title provides two purposes: (1) the emergency tolling of deadlines related to the initiation of matters; and (2) emergency suspension of deadlines in pending matters. The first purpose is relevant to this Court's analysis.

The operative language in the Order pertains to emergency tolling. Sections (a) through (f) discuss the emergency tolling period, which Section (d) defines as the four-month closure of the clerks' offices. *Id.* at 2–4. Sections (a), (b), and (d) mention the tolling period in the context of "the number of days that the courts were closed to the public[,]" which Section (d) defined as the days when the clerks' offices were closed to the public. *Id.* at 2–3. Section (c) excuses parties from demonstrating their inability to comply with those tolled deadlines. *Id.* at 3. Both Sections (d) and (e) exist to define terms relevant to the scope of the tolling period, with Section (d) defining the four-month closure and Section (e) defining the scope of "matters" subject to the provisions of the order. *Id.*

16

In that context, Section (f) references the fifteen-day extension after mentioning the reopening of the respective offices of the clerks of court on July 20, 2020. *Id.* at 4; *see D.C. v. Heller*, 554 U.S. 570, 577, 128 S. Ct. 2783, 2789 (2008) ("Logic demands that there be a link between the stated purpose and the command. . . . That requirement of logical connection may cause a prefatory clause to resolve an ambiguity in the operative clause."). Petitioner's interpretation would render Section (f) an anomaly among the other clauses, interjecting an entirely different extension unconnected to the tolling period, and render the Order's title misleading. Indeed, this Court must interpret the Order in a manner that is reasonable and not "absurd, illogical, or incompatible with common sense." *Lockshin*, 412 Md. at 276, 987 A.2d at 29 (citations omitted). The Order's references to the four-month closure comport with the title's reference to emergency tolling, suggesting that the fifteen-day extension is limited to claims affected by that tolling.

D.    *The preamble.*

Petitioner argues that the Tenth Revised Administrative Order's preamble recognizes the detrimental impacts of the COVID-19 pandemic on the ability of litigants to prepare pleadings and meet deadlines. Although the preamble is not an operative section of the Order, it is evidence of the Chief Judge's "purpose or goal." *See Georgia-Pac. Corp. v. Benjamin*, 394 Md. 59, 81, 904 A.2d 511, 524 (2006) (citations omitted).

The preamble discusses the Order's purpose in paragraphs three through six. Paragraph three states that "the Chief Judge . . . may be required to determine the extent to which court operations or judicial functions shall continue[,]" where "instances of emergency conditions, whether natural or otherwise, [] significantly disrupt access to or

17

the operations of one or more courts or other judicial facilities of the State or the ability of the Judiciary to operate effectively[.]" *Tenth Revised Admin. Ord.* at 1. Paragraph four provides that the COVID-19 pandemic created an emergency "for which measures continue to be required to mitigate potential for exposure for individuals visiting a court or judicial facility and for judicial personnel[.]" *Id.* Paragraph five recognizes that pandemic-related restrictions "had a widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses, with the impact falling hardest upon those who are impoverished[.]" *Id.* at 1–2. Similarly, paragraph six states that the widespread impacts of the COVID-19 pandemic "created a general and pervasive practical inability for certain deadlines to be met[.]" *Id.* at 2.

The preamble bears an uncanny resemblance to the language contained in Title 16, Chapter 1000 of the Maryland Rules. Paragraph three parallels Maryland Rule 16-1003(a), which authorizes the Chief Judge to issue administrative orders when she determines "that an emergency declared by the Governor or [a natural or other] event within the scope of [Maryland] Rule 16-1001(b) significantly affects access to or the operations of one or more courts or other judicial facilities of the State or the ability of the Maryland Judiciary to operate effectively[.]" Paragraph four tracks with Maryland Rule 16-1003(a)(12), which empowers the Chief Judge to "authorize administrative judges or security personnel to preclude or control entry into courthouses or other judicial facilities by persons who pose a credible threat to the health or safety of members of the public or judicial personnel[.]" Paragraph six reflects the language in Maryland Rule 16-1003(a)(7), which authorizes the

18

Chief Judge to "suspend, toll, extend, or otherwise grant relief from time deadlines . . . where there is no practical ability of a party subject to such deadline . . . to comply with the deadline[.]"[5]  The preamble's resemblance to the Maryland Rules suggests that the Chief Judge intended to advise the public of her obligations as the administrative head of the Judiciary, the scope of her authority under the Maryland Rules, and how she would exercise her authority during the COVID-19 pandemic.

Petitioner attributes a more expansive meaning to the preamble, which is similar to the arguments that this Court rejected in *Clarke*.  In that case, the petitioners filed an action for declaratory and injunctive relief against the respondent to prevent him from developing his residential property.  *Clarke*, 270 Md. at 344–45, 311 A.2d at 418.  Both parties owned property that was classified as "A" Agricultural District under Article 6 of the Carroll County Zoning Ordinance.  *Id.* at 345, 311 A.2d at 418.  The petitioners argued that the preamble to Article 6 limited the law's purpose to "continued farming activity," which prohibited respondent from developing his residential property, despite the ordinance expressly permitting single-family and two-family "[d]wellings[.]"  *Id.* at 345–46, 311 A.2d at 418–19.  This Court rejected that argument because "[t]he intention and meaning of the [General Assembly] are to be collected from the law itself and are not to be restrained by anything in the preamble."  *Id.* at 349, 311 A.2d at 421.  This Court reasoned that a

---

[5] Paragraph six was added in the first clarifying Amended Administrative Order alongside what is now Section (c), which excused parties from establishing their "practical inability to comply with [a tolled] deadline[.]" *Am. Admin. Ord. Clarifying* at 2 (Apr. 24, 2020), archived at: https://perma.cc/87KX-Y957.  This concurrent implementation suggests that Chief Judge intended for paragraph six of the preamble to justify Section (c), rather than the fifteen-day extension under Section (f).

19

preamble may be persuasive when resolving an ambiguous law, but it cannot override the law's conflicting operative language. *Id.* at 349–50, 311 A.2d at 421.

Like the petitioners in *Clarke*, Petitioner argues that the preamble supersedes the operative language. Petitioner relies on paragraphs five and six for the proposition that "the intent of the Orders [was] clearly to maximize the flexibility of the [c]ourts and statutes of limitations during the COVID-19 *emergency*, and not merely those portions of the emergency when the [c]ourts were closed." I disagree. For Petitioner to prevail, this Court would need to broaden the scope of the fifteen-day extension beyond the emergency tolling period, thereby rendering it an anomaly among its sister provisions that are expressly limited to the closure. A broader application of the fifteen-day extension would conflict with: (1) the Order's title that discusses emergency tolling; (2) the history of the fifteen-day extension that indicated a narrower application; and (3) the Maryland Judiciary's communications to the public that the extension would only apply to claims that were tolled during the closure. The generalized language in the preamble cannot outweigh those more explicit indicia of the Chief Judge's intent. *See Clarke*, 270 Md. at 349, 311 A.2d at 421 (noting that preambles are persuasive but not dispositive). This Court's goal is to harmonize provisions in the Order, not to distort them. *See Elsberry*, 482 Md. at 180, 286 A.3d at 13 (explaining that this Court's objective is to harmonize law and to avoid unreasonable or absurd constructions). Accordingly, I would decline Petitioner's invitation to broaden the scope of the fifteen-day extension.

E.     *Applying* Murphy v. Liberty Mut. Ins. Co*., 478 Md. 333, 274 A.3d 412 (2022).*

Respondent contends that this Court's language in *Murphy* "undercuts [Petitioner's] argument[,]" because this Court had "instruct[ed] that the 15-day grace period only applie[d] to the cases where statutes of limitations were tolled." Although I agree with this Court's description of the fifteen-day extension from *Murphy*, that language was dicta and not dispositive of the analysis in the case at bar.

In *Murphy*, this Court resolved a certified question from the United States District Court for the District of Maryland regarding whether the Chief Judge had authority to issue the administrative tolling orders. 478 Md. at 340, 274 A.3d at 416. This Court commented on the nature of the fifteen-day extension twice. *Id.* at 362, 369 n.43, 274 A.3d at 429, 433 n.43. This Court stated that "[t]he May 22 order further extended the filing deadlines for the initiation of matters by an additional 15 days past the date on which clerks' office[s] reopened and provided an example as to how a new filing deadline would be computed." *Id.* at 362, 274 A.3d at 429. Then, this Court stated in a footnote that "[l]ater revisions of the order also added a 15-day grace period to the tolling period." *Id.* at 369 n.43, 274 A.3d at 433 n.43. This Court observed that the grace period "was apparently based on [Maryland] Rule 16-1003(b), which" included a Rules Committee Note that "contemplate[d] that some extensions of deadlines might remain in place for a reasonable time after termination of an emergency." *Id.*, 274 A.3d at 431 n.43.

Petitioner correctly asserts that this Court's description of the fifteen-day extension in *Murphy* was dicta. The issue of the fifteen-day extension was not germane to the

21

disposition of the certified question in *Murphy*. *See Plank v. Cherneski*, 469 Md. 548, 594, 231 A.3d 436, 463 (2020) (noting that dicta is a comment that lacks "precedential" value because it is unnecessary for the disposition of a case, but "it may be considered persuasive" (citation omitted)). The plain language of the fifteen-day extension is ambiguous, which undermines this Court's peripheral observations in *Murphy*. Additionally, the fifteen-day extension cannot be an exercise of Maryland Rule 16-1003(b) because the grace period was implemented *before* the Chief Judge terminated COVID-19 emergency operations in the Judiciary. The basis for the grace period was Maryland Rule 16-1003(a)(7), which was the only Rule expressly invoked in the Tenth Revised Administrative Order. As discussed below, Maryland Rule 16-1003(a)(7) suggests that the Chief Judge's authority to extend deadlines was related to the public's practical inability to submit their pleadings whenever an emergency curtailed "access to" courts. *See* Md. Rule 16-1003(a)(7). For those reasons, *Murphy* does not bring this Court closer to a definitive interpretation of the fifteen-day extension.

      F.    *Maryland Rule 16-1003(a)(7).*

The language and history of Maryland Rule 16-1003(a)(7) further supports a narrower interpretation of the fifteen-day extension. The basis for the extension was Maryland Rule 16-1003(a)(7), which authorizes the Chief Judge to "extend . . . time deadlines . . . where there is no practical ability of a party subject to such a deadline . . . to comply with the deadline[.]" Before the Chief Judge may exercise her emergency powers, there must be "an emergency declared by the Governor . . . [that] significantly affects access to or the operations of one or more courts or other judicial facilities of the State or

the ability of the Maryland Judiciary to operate effectively[.]" Md. Rule 16-1003(a). The phrase "access to . . . one or more courts or other judicial facilities" provides a backdrop for when the Chief Judge may invoke her emergency authority to extend deadlines and when parties lack the "practical ability" to meet those deadlines. *See* Md. Rule 16-1003(a)(7). The Rule suggests that litigants do not have a "practical ability" to meet their deadlines when an emergency "significantly affects access to or the operations" of the Judiciary. *Id.*

The Rules Committee's discussion of Maryland Rule 16-1003(a)(7) indicates that "practical ability" refers to a litigant's inability to file pleadings due to court closures. The Committee Chair, the Honorable Alan M. Wilner, stated that "there needs to be a way to categorically extend deadlines . . . [i]f the filer is unable to timely file *due to an emergency and court closure*[.]" Rules Committee Minutes, at 25 (Mar. 13, 2020), archived at: https://perma.cc/ZC3N-6VNU (emphasis added). Another committee member, the Honorable Paula A. Price, noted that "[i]f an individual is unable to *physically file*, the statutes of limitations would be tolled." *Id.* (emphasis added). The Honorable Yvette M. Bryant "agreed[.]" *Id.* These statements clarify that Maryland Rule 16-1003(a)(7) was drafted with court closures specifically in mind.

The language of the Tenth Revised Administrative Order indicates that the Chief Judge implemented the fifteen-day extension to remedy litigants' inability to "access" courts during the closure of the clerks' offices. The Order's title mentions "[e]mergency [t]olling[,]" which Section (d) defines as the four-month closure. *Tenth Revised Admin. Ord.* at 1, 3. Section (c) absolves parties from establishing their "practical inability to

23

comply with such a deadline[,]" which refers to deadlines that were suspended during the closure under Sections (a) and (b). *Id.* at 2–3. To the extent the preamble offers any guidance, it only mentions "practical inability" within the context of "restrictions required to respond to the COVID-19 pandemic[.]" *Id.* at 1–2. The only "restriction" discussed in the Order was the closure of the clerks' offices. *See id.* at 1–4. Therefore, the language in Maryland Rule 16-1003(a)(7), the Rules Committee's discussions, and the language of the Order imply that the Chief Judge extended filing deadlines to assist litigants who lacked "access to" the clerks' offices during the four-month closure.

### III.     The Appropriate Interpretation of the Fifteen-day Extension.

In light of the history of the fifteen-day extension clause, the Maryland Judiciary's communications to the public, the Tenth Revised Administrative Order's title, the preamble, this Court's decision in *Murphy*, and the language and history of Maryland Rule 16-1003(a)(7), it is clear that the fifteen-day extension in Section (f) applied to deadlines for the initiation of matters that were suspended between March 16, 2020 and July 20, 2020. Although the above indicia do not individually establish the Chief Judge's intent, they cumulatively support a narrower extension.

Petitioner asserts that this Court should interpret the definition of "matters" under Section (e) and the fifteen-day extension under Section (f) to extend the grace period to all matters with deadlines that would have expired between March 16, 2020 and April 3, 2022. Petitioner's isolated interpretation is similar to the "surgically extracted" construction of

24

Md. Code Ann., Real Property ("Real Prop.") § 14-117(a)(3)[6] that this Court rejected in *Elsberry*, 482 Md. at 183, 286 A.3d at 15. In *Elsberry*, the purchaser sued the seller for allegedly violating Real Prop. § 14-117(a)(3)(ii) because it had imposed an amortized water and sewer charge that exceeded twenty years for real property located in Charles County. *Id.* at 164–65, 286 A.3d at 4. The purchaser argued that Real Prop § 14-117(a)(3)(ii) applied to properties throughout Maryland because it did not expressly mention Prince George's County. *Id.* at 171, 286 A.3d at 8. This Court rejected the purchaser's isolated reading of Real Prop. § 14-117(a)(3)(ii) because it disregarded "the context of the entire statute and its legislative purpose." *Id.* at 183, 286 A.3d at 15 (citations omitted). This Court held that Real Prop. § 14-117(a)(3)(ii) was limited to residential real property located in Prince George's County because: (1) the bill's title and purpose paragraph pertained to Prince George's County; and (2) the introductory language of Real Prop. § 14-117(a)(3)(i) was "limited to Prince George's County[,]" and had therefore "modif[ied] the remainder of the subsection[.]" *Id.* at 183–84, 197, 286 A.3d at 15, 23.

Like the purchaser in *Elsberry*, Petitioner "examine[s] the trees so closely that [he] do[es] not see the forest[.]" *Id.* at 183, 286 A.3d at 15 (cleaned up). Although the COVID-19 emergency period extended beyond the closure of the clerks' offices, that alone does

---

[6] Real Prop. § 14-117(a)(3)(i) "requires a seller of residential real property in Prince George's County to provide the purchaser with certain disclosures in the initial contract of sale, including the estimated cost of any deferred water and sewer charges for which the purchaser may become liable." *Elsberry*, 482 Md. at 164, 286 A.3d at 4. Real Prop. § 14-117(a)(3)(ii) prohibits a seller from "impos[ing] upon the purchaser a repayment period [of water and sewer costs] for a duration longer than twenty years from the date of initial sale." *Id.* at 165, 286 A.3d at 4.

not negate the significant indicia that the administrative orders pertained to emergency tolling, which Section (d) defines as the four-month closure. The Order's operative language discusses: (1) tolling filing deadlines "by the number of days that the courts were closed" in Sections (a) and (b); (2) clarifying parties' obligations following the tolling period in Section (c); (3) defining the tolling period and "matters" encompassed therein in Sections (d) and (e), respectively; and (4) the clerks' offices reopening on July 20, 2020 in Section (f). *Tenth Revised Admin. Ord.* at 2–4. Petitioner's construction disregards the stated purpose of Sections (d) and (e), which is "tolling statutes of limitations and other deadlines related to the initiation of matters[.]" *Id.* at 3; *Elsberry*, 482 Md. at 179, 286 A.3d at 12 ("This Court construes the statute as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless[,] or nugatory." (cleaned up)).

The ambiguity of Section (f) dissipates upon reviewing its context and history. The Chief Judge indicated in the First Administrative Order that the extension would only apply to "statutory and rules deadlines related to the initiation of matters" that were tolled during the court closure. *First Admin. Ord.* at 1–2. Following the implementation of the fifteen-day extension, the Maryland Judiciary advised the public that the extension would apply to claims affected by the closure of the clerks' offices. The Chief Judge never corrected that interpretation. The title suggests that remedies under the Order pertained to emergency tolling, which occurred during the four-month closure. Maryland Rule 16-1003(a)(7), which governs the extension in this case, was drafted, in relevant part, to remedy situations

26

where litigants could not physically file their pleadings due to court closures.[7] Given these indicia of the Chief Judge's intent, I agree with the Per Curiam opinion's conclusion to answer the certified question in the negative and holding that the fifteen-day extension applied to claims that were suspended during the four-month closure, despite the ambiguity of Section (f) under the Tenth Revised Administrative Order.

## CONCLUSION

I agree with the Per Curiam opinion's conclusion that the fifteen-day extension under Section (f) did not apply filing to deadlines that would have expired during the COVID-19 emergency period between March 16, 2020, and April 3, 2022. Rather, the extension applied narrowly to claims that were suspended during the emergency tolling period between March 16, 2020 and July 20, 2020. In my view, this Court can only reach that conclusion by recognizing the ambiguity of Section (f) and evaluating extrinsic indicia of Chief Judge Barbera's intent. In this case, the Petition for Judicial Review was filed subsequent to the thirty-day deadline under Maryland Rule 7-203(a)(2) and Baltimore City Code, Article 22, § 33(l)(14). The limitations period fell outside the ambit of the Tenth Revised Administrative Order because it had not begun to accrue until December 22, 2021. Absent the fifteen-day extension, Petitioner's filing was untimely, and the circuit court correctly dismissed this case. For the foregoing reasons, I concur with the Per Curiam opinion.

---

[7] I do not opine on whether the Chief Judge had authority under Maryland Rule 16-1003(a)(7) to extend time deadlines through the entire COVID-19 emergency period, as Petitioner contends. I only conclude that the Chief Judge had not done so in this instance.

27

Circuit Court for Baltimore City
Case No. 24-C-22-000458
Argued: May 4, 2023

IN THE SUPREME COURT

OF MARYLAND*

Misc. No. 24

September Term, 2022

───────────────────────────────

IN THE MATTER OF THE PETITION
OF KERN HOSEIN

───────────────────────────────

Fader, C.J.
Watts
Hotten
Booth
Biran
Gould
Eaves,

JJ.

───────────────────────────────

Dissenting Opinion by Biran, J.,
which Watts and Eaves, JJ., join.

───────────────────────────────

Filed: August 14, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Respectfully, I dissent.

In a series of administrative orders, the former Chief Judge of this Court,[1] the Honorable Mary Ellen Barbera, tolled, suspended, and extended the statutes of limitations and other deadlines for the initiation of matters in Maryland courts during the COVID-19 emergency. These were remedial orders – *i.e.*, the Chief Judge issued them to remedy the adverse effects of the COVID-19 pandemic on the ability of parties to initiate matters within the deadlines that normally would apply.

One of the measures that eventually became part of this series of orders was a 15-day extension that the Chief Judge applied to deadlines to initiate certain "matters." The question we must decide in this case is, which "matters" did the Chief Judge intend would receive the 15-day extension? We must determine whether the provision in the relevant order that referred to filing deadlines to initiate "matters" having been extended by an additional 15 days was linked to tolling during the closure of courts, which ended on July 20, 2020, or was meant to apply to all matters with deadlines that otherwise would have expired during the emergency operations period, which ended on April 3, 2022. Interpretation of the relevant order is necessary to determine the timeliness of filing by

---

[1] The constitutional amendment that changed the name of the Court of Appeals of Maryland to the Supreme Court of Maryland also changed the titles of those who serve on the Court. The Chief Judge of the Court of Appeals of Maryland became the Chief Justice of the Supreme Court of Maryland, and the other Judges of the Court of Appeals became Justices of the Supreme Court. These changes, in addition to the change of the name of the Court, took effect on December 14, 2022, subsequent to the retirement of both Chief Judge Mary Ellen Barbera and her successor as Chief Judge, the Honorable Joseph M. Getty. I will refer to both of these former leaders of this Court by the title they held while serving in that capacity, *i.e.*, Chief Judge.

Appellant Kern Hosein, who sought judicial review of the denial of retirement benefits from Appellee Fire and Police Employees' Retirement System of Baltimore City ("the City").

I agree with Justice Hotten that the order in effect at the time Mr. Hosein filed his petition for judicial review in the Circuit Court for Baltimore City is ambiguous on this point. However, I disagree as to how to resolve the ambiguity. The context surrounding the adoption of the relevant provisions in the order reveals that, as of November 24, 2020, with COVID-19 cases surging, Chief Judge Barbera decided that the 15-day extension should apply to all matters with deadlines that otherwise would expire between the date when the clerk's offices closed at the beginning of the pandemic (March 16, 2020) and the end of emergency operations in the Maryland Judiciary (which turned out to be April 3, 2022). A contrary conclusion leads to illogical and unjust results that I cannot believe Chief Judge Barbera intended.

Under the correct interpretation of Chief Judge Barbera's order, Mr. Hosein's petition for judicial review is timely. The circuit court erred in dismissing this case.

**I**

**The Order Under Review**

Beginning in March 2020, Chief Judge Barbera issued dozens of administrative orders in response to the COVID-19 emergency. At issue here is a series of orders in which, among other things, Chief Judge Barbera tolled, suspended, and extended the deadlines for the initiation of matters in Maryland courts. In particular, we must interpret Chief Judge Barbera's final order on this subject, which she issued on August 6, 2021. *See* TENTH

REVISED ADMINISTRATIVE ORDER ON THE EMERGENCY TOLLING OR SUSPENSION OF STATUTES OF LIMITATIONS AND STATUTORY AND RULES DEADLINES RELATED TO THE INITIATION OF MATTERS AND CERTAIN STATUTORY AND RULES DEADLINES IN PENDING MATTERS (Aug. 6, 2021), available at https://perma.cc/5RFY-XAFV ("Tenth Revised Order"[2]). The Tenth Revised Order included the following language germane to this appeal:[3]

(a) By previous Order, pursuant to Maryland Rule 16-1003(a)(7), all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, were tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

(b) By this Order, those same deadlines remained tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

(c) Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove ... their practical inability to comply with such a

---

[2] For purposes of brevity, I will cite to other orders in this series using similar short titles.

[3] Chief Judge Getty issued the last three orders in this series, including the Final Administrative Order, dated April 3, 2022, but it is Chief Judge Barbera's Tenth Revised Order that was in effect at the time that Mr. Hosein filed his petition for judicial review. At oral argument, attorneys for both parties repeatedly referred to the Tenth Revised Order as having been issued by "this Court." That was incorrect. The Tenth Revised Order was not issued by this Court, but rather by Chief Judge Barbera in her capacity as the administrative head of the Maryland Judiciary. Although Chief Judge Barbera was my colleague on this Court at the time she issued this Order, she did not consult me about its language, nor would I have expected her to do so. Nor, as far as I know, did she consult any of the other Judges who were then serving on this Court, including Judge Getty, her eventual successor as Chief Judge.

deadline if it occurred during the COVID-19 emergency to obtain the relief that this Order provides; and

(d) For the purposes of tolling statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days that the offices of the clerks of court were closed to the public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of that matter; and

(e) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "matters" are, *nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of COVID-19 emergency operations in the Judiciary as determined by the Chief Judge of the Court of Appeals; and

(f) With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days; and

(g) Any such filings made within the period described in (d) and (e) shall relate back to the day before the deadline would have expired had it not been tolled or suspended[.]

Tenth Revised Order at 3-4 (footnote omitted). A footnote to section (f) provided an example of how the 15-day extension worked:

For example, if two days remained for the filing of a new matter on March 15, 2020, then two days would have remained upon the reopening of the offices of the clerks of court to the public on July 20, 2020. With the additional fifteen days, seventeen days would be left for a timely filing, beginning July 20, 2020.

*Id.* at 4 n.1.

On March 28, 2022, Chief Judge Getty issued an administrative order lifting the COVID-19 emergency, effective April 3, 2022. *See* ADMINISTRATIVE ORDER LIFTING THE COVID-19 HEALTH EMERGENCY AS TO THE MARYLAND JUDICIARY at 2 (Mar. 28, 2002),

- 4 -

available at https://perma.cc/6ULX-6W6C. Thus, April 3, 2022 became "the termination date of the COVID-19 emergency operations in the Judiciary" in section (e) of the Tenth Revised Order.

The Tenth Revised Order was in effect in January 2022, when Mr. Hosein filed his petition for judicial review in the Circuit Court for Baltimore City. The circuit court dismissed Mr. Hosein's petition as untimely. The correctness of the circuit court's ruling depends on whether the 15-day extension referred to in section (f) of the Tenth Revised Order applies to the matter that Mr. Hosein initiated with his January 2022 filing.

**II**

**Analysis**

As Justice Hotten explains, when construing an administrative order, we apply the same interpretive principles that we use when analyzing a statute. I will not repeat the principles that Justice Hotten has cataloged in her concurring opinion. However, there is an additional canon of statutory construction that applies here: Because Chief Judge Barbera's administrative orders providing relief from the application of deadlines for the initiation of matters were remedial in nature, we must construe the Tenth Revised Order "as liberally in favor" of Mr. Hosein "as [the Tenth Revised Order's] provisions will permit in order to effectuate its benevolent purposes." *Matter of Collins*, 468 Md. 672, 689 (2020).

**A. The Tenth Revised Order Is Ambiguous.**

I agree with Justice Hotten that the Tenth Revised Order is ambiguous. Below, I make a few additional points about section (f) and conclude that section (e) also is ambiguous.

1. Section (f)

Section (f) of the Tenth Revised Order states: "With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days[.]" In my view, the ambiguity in section (f) emanates from the verb form that Chief Judge Barbera used in referring to the extension: "having been extended." On the one hand, this phrase could lead to a reading of section (f) as only providing information about what a prior, rescinded order had done in the past. On this reading of section (f), there is no indication from the reference to the 15-day extension that Chief Judge Barbera intended anything in the Tenth Revised Order to have any bearing on extensions of deadlines to initiate matters.

On the other hand, the recognition that Chief Judge Barbera used a perfect participle phrase[4] – "having been extended" – can lead to a different interpretation. If Chief Judge Barbera had intended merely to advise the public as a point of information that some deadlines to file matters had been extended by a previous order, she could have used the simple past tense: "were extended." Instead, she chose to use "having been extended," which can be read as signifying that something elsewhere in the operative language of the Tenth Revised Order flows from, or bears on, the "filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days[.]" On this reading, section (f) is more than a superfluous, vestigial remain of a prior order. Rather, it is part of a multi-

_____

[4] *What are participle clauses?*, TEST-ENGLISH, available at https://perma.cc/36FC-3ZLP ("By using the perfect –ing participle clause you can emphasi[z]e that an action was previous to another. These clauses are commonly used to express the cause of a second action.").

faceted scheme designed to provide relief from deadlines to initiate matters to those affected by the COVID-19 emergency.

In addition, section (f) makes no reference to the tolling or suspending of deadlines. It merely refers to the reopening of the courts and "the filing deadlines to initiate matters having been extended ... by an additional 15 days[.]" So, the correct interpretation could be the attenuated one, as the City and my colleagues in the Plurality contend, that the reference to the reopening of the courts links the "extended" deadlines to the tolling, thereby applying the extension only to matters with deadlines that had been tolled. But section (f) could also be interpreted based on its plain language, as Mr. Hosein contends, to establish "extended" deadlines separate and apart from the tolling of the matters affected by the closure. The basis for the tolling (the closure) no longer being in existence, the "extended" deadlines could have been meant to address the ongoing emergency and its difficulties, disconnected from the closure. The words "extended" and "additional" could support either reading, because they could mean "extended" and "additional" to the tolling period or "extended" and "additional" in relation to the original deadlines.[5]

What *is* clear about section (f) is the meaning of its first clause: "With the offices of the clerks of courts having been reopened to the public on July 20, 2020[.]" In conjunction with the rest of section (f), this opening clause denotes that the 15-day extension became effective after the courts reopened (and litigants once again could file pleadings that

---

[5] The footnote example accompanying section (f) is not helpful. Because it is an example, the footnote could only conceivably describe one factual scenario, which does not mean that it excludes other factual scenarios, such as Mr. Hosein's.

initiated matters). It does not mean that the 15-day extension was necessary *because* the clerk's offices had been closed to the public. This understanding of section (f)'s first clause is confirmed by reviewing section (f)'s predecessors in Chief Judge Barbera's earlier orders.

The first specific reference to an extension of deadlines to initiate matters came in the order that Chief Judge Barbera issued on May 4, 2020. *See* May 4 Amended Order (May 4, 2020), available at https://perma.cc/9T6H-VPFY.[6] Having provided in section (a) of that Order that "all statutory and rules deadlines related to the initiation of matters … shall be tolled or suspended … effective March 16, 2020, by the number of days that the courts are closed to the public," Chief Judge Barbera stated in section (c) that "[s]uch filing deadlines further shall be extended by a period to be described in an order by the Chief Judge … terminating the COVID-19 emergency period[.]" May 4 Amended Order at 2.

On May 22, 2020, Chief Judge Barbera announced several phases under which Maryland courts would gradually resume operations. *See* ADMINISTRATIVE ORDER ON THE PROGRESSIVE RESUMPTION OF FULL FUNCTION OF JUDICIARY OPERATIONS PREVIOUSLY RESTRICTED DUE TO THE COVID-19 EMERGENCY at 3 (May 22, 2020), available at

---

[6] Chief Judge Barbera issued the first of her orders granting relief from various deadlines on April 3, 2020. *See* First Order (April 3, 2020), available at https://perma.cc/568M-28TV. In the First Order, as well as in an amended order issued on April 24, 2020, Chief Judge Barbera stated that an order extending deadlines would be forthcoming at a later date. However, as I read those first two orders, it is not clear whether the extension will apply to deadlines to initiate matters, or to deadlines to hear pending matters, or to both. In the May 4 Amended Order, Chief Judge Barbera made clear that both types of deadlines would be extended by a period to be described in an order by the Chief Judge terminating the COVID-19 emergency period. *See* May 4 Amended Order, sections (c) and (f).

https://perma.cc/T34Y-SBN7. After explaining that "Phase I is the current state of emergency operations," Chief Judge Barbera stated that, on June 5, 2020, the courts would enter Phase II and expand the scope of matters that could be heard remotely and onsite. *Id.* at 2-3.

Most important for our purposes, on July 20, 2020, the courts would enter Phase III, at which time the clerk's offices would reopen and courts would conduct a broader range of matters. *Id.* at 3.

On August 31, 2020, the courts would enter Phase IV, at which time courts would resume non-jury trials and contested hearings in criminal, civil, family, and juvenile matters. *Id.* Finally, on October 5, 2020, the courts would enter Phase V, the return to full operations. *Id.*

On the same day that Chief Judge Barbera announced these phases for resuming Judiciary operations, Chief Judge Barbera also issued a revised order relating to deadlines. *See* Revised Order (May 22, 2020), available at https://perma.cc/58SR-UWEH. The Revised Order clarified in section (d) that all the days the clerk's offices would be closed to the public (the period between March 16, 2020 and July 20, 2020) would not count against the time remaining for the initiation of matters. Revised Order at 2. Following this new clarification, the Revised Order included new language in section (e) setting the length of the extension of filing deadlines that the Chief Judge had presaged on May 4:

> (e) With the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days;

*Id.* at 3 (footnote omitted).[7] The impetus for, and import of, this provision are clear. Because Chief Judge Barbera now knew the date that the clerk's offices would reopen and, therefore, be able once again to accept filings initiating matters, it was time for the Chief Judge to let the public know what the length of the promised extension of deadlines for initiating matters would be: 15 days. The prefatory clause of section (e) of the Revised Order only explains why the length of the extension is being specified at that time. It does not indicate any limitation on the "matters" to which the extension shall apply, nor does it in any way link the substantive need for an extension of deadlines to the circumstance that the clerk's offices have been closed to the public. Indeed, as a matter of logic, Chief Judge Barbera must have implemented the 15-day extension for reasons other than the closure of the clerk's offices, because the extension was only going to become effective after the clerk's offices reopened to the public. Put another way, if the only obstacle that litigants faced in attempting to initiate matters at the outset of the pandemic was the inability of the clerk's offices to accept initiating filings, there would have been no need for an extension of deadlines after the clerk's offices reopened.[8]

_____

[7] Notably, while the Chief Judge initially contemplated that the length of the extension would be announced at the same time that the Chief Judge terminated the COVID-19 emergency, *see* May 4 Amended Order at 2, that did not turn out to be the case. By May 22, 2020, Chief Judge Barbera had decided that the clerk's offices would reopen before the end of the COVID-19 emergency. The emergency period continued for more than 20 months after the clerk's offices reopened to the public.

[8] As I discuss below, it is clear that the reason for the 15-day extension was the recognition that, due to illness and other disruption caused by COVID-19, an unknown percentage of litigants (and/or their attorneys) would not be able to meet the initiating deadlines that otherwise would apply to their claims.

In subsequent orders issued after the clerk's offices reopened, including the Tenth Revised Order, Chief Judge Barbera simply changed the tense of the participle in this first clause: "to be reopened" became "having been reopened." There is no reason to believe that Chief Judge Barbera intended the first clause of section (f) to do any more work than it had done before the clerk's offices reopened. In sum, read in context, the first clause of section (f) of the Tenth Revised Order simply explains the timing of the "previous Order" that implemented the 15-day extension.

2. Section (e)

Section (e) of the Tenth Revised Order provides:

(e) **For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters**, in this Order, "matters" are, *nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of the COVID-19 emergency operations in the Judiciary as determined by the Chief Judge of the Court of Appeals[.]

Tenth Revised Order at 3-4 (emphasis added).

If section (e) existed without the language in bold above, the reach of the 15-day extension referred to in section (f) would be clear: "matters" in the Tenth Revised Order (including the "matters" referred to in section (f)) would include all matters with deadlines that otherwise would have expired at some point during the COVID-19 emergency period

- 11 -

(March 16, 2020 through April 3, 2022).[9] However, section (e)'s prefatory clause complicates matters. In my view, this clause is ambiguous.

On one hand, the prefatory language in section (e) (and the same prefatory language in section (d)) can be read as the Plurality reads it, *i.e.*, as "defining 'matters' for a specific purpose: 'tolling of statutes of limitations and other deadlines related to the initiation of matters.'" Plur. Op. at 9. On this reading, the verb "tolling" has a compound object; *i.e.*, it refers to tolling of "statutes of limitations" and to tolling of "other deadlines related to the initiation of matters." *See also* Concur. Op. of J. Hotten at 6 ("[T]he use of 'and' in the prefatory clause connects 'statutes of limitations' with 'other deadlines related to the initiation of matters[.]'"). If this is the correct reading of section (e)'s prefatory clause, only a matter that accrued on or before July 20, 2020 – and therefore had its statute of limitations or other deadline for initiation "tolled" as a result of the clerk's offices being closed to the public – is a "matter" under the Tenth Revised Order.

On the other hand, the prefatory clause of section (e) can be read as stating that the definition of "matters" that follows is being provided for two "purposes": (1) for the purpose of tolling of statutes of limitations; and (2) for the purpose of "other deadlines related to the initiation of matters." This reading is consistent with the prefatory clause's reference to multiple "purposes," as opposed to the Plurality's reading of the clause, which leads the Plurality (and Justice Hotten in one instance) to refer to a singular "purpose" of

---

[9] In addition, if the lack of reference to tolling and suspending deadlines in section (f) means it is not related to the tolling provision, then the prefatory language in section (e) would have no relevance to section (f). This would support a reading that section (f)'s extended deadlines have no nexus with tolling.

section (e). *See* Plur. Op. at 9; Concur. Op. of J. Hotten at 26. On this alternate reading, "tolling" has one object – "statutes of limitations" – and the phrase "other deadlines related to the initiation of matters" relates to the deadlines that were not "tolled."

On its face, both of these readings of the prefatory clause of section (e) are reasonable, which makes section (e) ambiguous.[10]

----------

Because the Tenth Revised Order is remedial in nature, our inquiry should end simply by resolving the ambiguity in favor of Mr. Hosein, who is among the class of persons to whom Chief Judge Barbera sought to provide relief in her series of administrative orders. *See, e.g.*, *Design Kitchen and Baths v. Lagos*, 388 Md. 718, 729 n.7 (2005) (observing that silence in a statute "may itself be an ambiguity and, where appropriate, does, and should, trigger the liberal interpretation rule applicable to remedial statutes"); *Elste v. ISG Sparrows Point, LLC*, 188 Md. App. 634, 653-54 (2009) (because the statute under review was remedial, "[a]ny uncertainty in the law should be resolved in favor of the claimant, and thus interpretation of its provisions may depend upon whether its terms are clear or ambiguous"). However, even if we "search[] for [Chief Judge Barbera's] intent in other indicia, including the history of the [Tenth Revised Order] or

---

[10] Section (g) also is arguably ambiguous. Although it comes immediately after (f), section (g) refers only to "[a]ny such filings made within the period described in (d) and (e)" before stating that they "shall relate back to the day before the deadline would have expired" without the tolling. Because, under the City's position, the same would seem to necessarily be true of the 15-day extension, which is not mentioned, the omission in section (g) of a reference to section (f) would support an application of section (f) separate from the tolling and courts' closure. *See also* pages 22-24 & 28 n.24 below.

other relevant sources intrinsic and extrinsic" to the issuance of the Order, *Lockshin v. Semsker*, 412 Md. 257, 276 (2010), the outcome is the same, as I explain below.

**B. Other Indicia of Chief Judge Barbera's Intent**

The overriding contextual factor that sheds light on Chief Judge Barbera's intent is the unprecedented disruption and devastation caused by COVID-19. It is important to place Chief Judge Barbera's orders concerning the initiation of matters properly in that context. When that context is considered, it becomes clear that, when she issued the Fifth Revised Order on November 24, 2020, Chief Judge Barbera decided that the 15-day extension should apply to all matters that otherwise would have expired between March 16, 2020 and the end of emergency operations in the Maryland Judiciary. The relevant operative language remained the same thereafter, including in the Tenth Revised Order.

1. March 2020 – October 2020

The weeks following Governor Larry Hogan's declaration of a state of emergency on March 5, 2020,[11] were unlike any period we had ever lived through. On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic.[12] On March 12, 2020, the Governor took several "extraordinary steps," including closing public schools,

---

[11] *UPDATE: Governor Hogan Declares State of Emergency, Expands Statewide Response to Novel Coronavirus*, THE BAY NET (Mar. 6, 2020), available at https://perma.cc/NY5Z-N8GZ.

[12] Bill Chappell, *Coronavirus: COVID-19 is Now Officially a Pandemic, WHO Says*, NPR (Mar. 11, 2020), available at https://perma.cc/4UEK-MWM9.

calling up the Maryland National Guard, and prohibiting mass gatherings of 250 people or more, including for religious purposes.[13]

On March 12, 2020, Chief Judge Barbera issued administrative orders suspending all non-essential judicial activities and jury trials statewide until at least April 3, 2020. *See* MD. JUDICIARY: COVID-19 TIMELINE OF EVENTS, available at https://perma.cc/VU32-3M4G. On March 13, 2020, Chief Judge Barbera issued an administrative order closing the courts, effective March 16, 2020, through April 3, 2020. *Id.*

On March 16, 2020, the Governor announced by executive order the closing of all bars, restaurants, gyms, and movie theatres; gatherings of 50 or more individuals were prohibited, while 1,000 Maryland National Guard members were activated to support the fight against COVID-19.[14] By March 19, 2020, Governor Hogan had limited gatherings to 10 people, ordered the closure of shopping malls, and restricted access to Baltimore/Washington International Thurgood Marshall Airport.[15]

---

[13] Jenny Fulginiti et al., *2020 Timeline: Coronavirus in Maryland*, WBAL-TV 11 (updated Jan. 4, 2022), available at https://perma.cc/Z4F9-466F.

[14] Ryan Dickstein*, Gov. Hogan Orders Bars, Restaurants, Gyms, Movie Theaters to Close*, WMAR-2 BALT. (updated Mar. 17, 2020), available at https://perma.cc/7C9J-9CU3 (quoting Governor Hogan as saying: "Decision makers at the federal, state, and local level are going to have to take drastic actions right now that may seem scary and may sound extreme. They will be terribly disruptive, but they are also absolutely necessary to save the lives of hundreds of thousands of Americans.").

[15] Kate Amara et al., *Hogan Signs Emergency COVID-19 Legislation as 5-Year-Old Tests Positive*, WBAL-TV 11 (updated Mar. 20, 2020), available at https://perma.cc/5GPV-XLD9.

On March 23, 2020, the Governor ordered the closure of all non-essential businesses in the State.[16] And, on March 30, 2020, the Governor issued a stay-at-home order, making the willful violation of the order a misdemeanor punishable by fine and imprisonment.[17] News articles from this period cast a bleak outlook on the future, with the subheading of one article reading: "The United States is About to Endure a Collective Trauma Unlike Anything in Recent Memory."[18]

This was the context in which Chief Judge Barbera issued the First Order on April 3, 2020, tolling "all statutory and rules deadlines related to the initiation of matters" between March 16, 2020 and the unspecified date when the clerk's offices would eventually reopen. First Order at 1-2.

On April 15, 2020, the global case count surpassed two million, just two weeks after passing one million.[19] As discussed above, on May 4, 2020, Chief Judge Barbera issued an amended order in which, for the first time, she explicitly stated that an extension of

---

[16] Luke Broadwater et al., *Maryland Gov. Hogan Announces Closure of Nonessential Businesses Due to Coronavirus Pandemic*, BALT. SUN, (Mar. 23, 2020), available at https://perma.cc/6C2Y-Y9ZJ.

[17] *As COVID-19 Crisis Escalates in Capital Region, Governor Hogan Issues Stay at Home Order Effective Tonight*, S. MD. NEWS NET (Mar. 30, 2020), available at https://perma.cc/6MB7-CD6Y.

[18] David Scharfenberg, *A Quarter Million Americans Could Die from the Coronavirus. Maybe More. How do we Absorb that Much Death?*, BOS. GLOBE (updated Apr. 3, 2020), available at https://perma.cc/T8G9-A2NS.

[19] *Coronavirus: The First Three Months as it Happened*, NATURE (Apr. 22, 2020), available at https://perma.cc/5DQL-SSY4.

deadlines for the initiation of matters would be forthcoming. The May 4 Amended Order

began with a preamble that, among other things, stated:

> WHEREAS, The impact of the restrictions required to respond to the COVID-19 pandemic has had a widespread detrimental impact upon the administration of justice, impeding the ability of parties and potential litigants to meet with counsel, conduct research, gather evidence, and prepare complaints, pleadings, and responses, with the impact falling hardest upon those who are impoverished; and
>
> WHEREAS, the detrimental impact of the COVID-19 pandemic is so widespread as to have created a general and pervasive practical inability for certain deadlines to be met[.][20]

Sections (a) through (d) of the May 4 Amended Order read, in relevant part, as follows:

> (a) Pursuant to Maryland Rule 16-1003(a)(7), all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, shall be tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts are closed to the public due to the COVID-19 emergency by order of the Chief Judge…; and
>
> (b) Justice requires that the ordering of the suspension of such deadlines during an emergency as sweeping as a pandemic be applied consistently and equitably throughout Maryland, and no party or parties shall be compelled to prove his, her, its, or their practical inability to comply with such a deadline if it occurred during the COVID-19 emergency to obtain the relief that this Administrative Order provides; and
>
> (c) *Such filing deadlines* further shall be extended by a period to be described in an order by the Chief Judge … terminating the COVID-19 emergency period; and

---

[20] This portion of the preamble first appeared in an administrative order that Chief Judge Barbera issued on April 24, 2020, clarifying the emergency tolling procedures. Amended Order at 1-2 (Apr. 24, 2020), available at https://perma.cc/87KX-Y957.

(d) Any *such filings* made within the to-be-described period in (c) shall relate back to the day before the deadline expired[.]

May 4 Amended Order at 2 (emphasis added).

We can glean at least three important points from the context surrounding the early administrative orders and the language Chief Judge Barbera used in them. First, Chief Judge Barbera recognized that COVID-19 not only interfered with the ability of claimants to initiate matters by eliminating the ability of clerk's offices to receive pleadings initiating those matters, but also by impeding the ability of potential litigants and their attorneys to take the necessary steps to meet initiating deadlines.

Second, Chief Judge Barbera recognized that, even after the clerk's offices eventually reopened, the disruption COVID-19 would have caused with respect to the preparation of complaints and other pleadings would not be cured only by tolling the filing deadlines by the number of days the courts were closed. Rather, an additional extension of deadlines to initiate matters would be necessary.

Third, we can fairly conclude that, on May 4, 2020, when Chief Judge Barbera referred to the further extension of filing deadlines, she only had in mind deadlines for matters that would also be subject to tolling under section (a) of the May 4 Amended Order; *i.e.*, deadlines to initiate matters that would have accrued by the time the courts reopened to the public. We can reach this conclusion because in section (c) of the May 4 Amended Order, Chief Judge Barbera referred to "[s]uch filing deadlines" being subject to further extension. "Such filing deadlines" referenced the deadlines discussed in section (a), which were deadlines subject to tolling due to the closing of the clerk's offices to the public.

- 18 -

Additionally, in section (d), Chief Judge Barbera provided that "[a]ny such filings" made within the extension period would "relate back to the day before the deadline expired," further confirming that the filing deadlines that were tolled due to the court closures were the deadlines that would receive an additional extension.

For a while after the May 4 Amended Order was issued, it appeared that we would be able to put the pandemic behind us in 2020. On May 15, 2020, following the lead of other states that had begun reopening in late April, Governor Hogan lifted Maryland's "stay-at-home" order.[21] As discussed above, on May 22, 2020, Chief Judge Barbera announced that clerk's offices would reopen on July 20, 2020, and set the phases for the resumption of Judiciary operations. This was also when Chief Judge Barbera issued the Revised Order in which she added new sections (d) and (e):

> (d) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days that the offices of the clerks of court were closed to the public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of that matter; and

> (e) With the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days;

Immediately after those new sections came section (f), in which Chief Judge Barbera provided:

---

[21] Luke Broadwater et al., *Maryland Gov. Hogan Lifts Stay-at-Home Order, Allows Limited Retail to Resume*, BALT. SUN (May 13, 2020), available at https://perma.cc/54GD-RKW7.

(f) Any such filings made within the period described in (d) *and (e)* shall relate back to the day before the deadline would have expired *had it not been tolled or suspended*[.]

*Id.* at 3 (emphasis added). Thus, in the Revised Order, consistent with the May 4 Amended Order, Chief Judge Barbera explicitly linked the deadlines that were to be extended by 15 days to the deadlines that also would have been tolled or suspended due to the court closures.

If there had been no material substantive changes to Chief Judge Barbera's orders between the Revised Order and the Tenth Revised Order,[22] I would agree with the Plurality's and Justice Hotten's interpretation of the Tenth Revised Order. But there were substantive changes in those orders caused by the worsening of the pandemic.

2. November 2020

The Judiciary entered Phase V operations as planned on October 5, 2020. However, in November 2020, a "rapid increase of COVID-19 infection rates throughout Maryland" required "a realignment of the phase of operations consistent with the worsening health conditions and concomitant risk to individuals visiting a court or judicial facility and to judicial personnel[.]" *See* SIXTH ADMINISTRATIVE ORDER RESTRICTING STATEWIDE JUDICIARY OPERATIONS DUE TO THE COVID-19 EMERGENCY at 2 (Nov. 24, 2020), available at https://perma.cc/3QLD-EGE6. On November 12, 2020, Chief Judge Barbera

---

[22] Between May and October 2020, Chief Judge Barbera issued two more revised orders that made non-substantive changes to the provisions relating to the initiation of matters. *See* Second Revised Order (June 3, 2020), available at https://perma.cc/NZ9J-TAKV (issued shortly before the Judiciary entered Phase II operations); Third Revised Order (Oct. 2, 2020), available at https://perma.cc/L3VT-S758 (issued shortly before the Judiciary entered Phase V operations).

announced that, due to the surge in COVID-19 cases, the Judiciary would regress from Phase V operations to Phase III operations, effective November 16, 2020, through December 31, 2020. *See* FIFTH ADMINISTRATIVE ORDER RESTRICTING STATEWIDE JUDICIARY OPERATIONS DUE TO THE COVID-19 EMERGENCY (Nov. 12, 2020) available at https://perma.cc/K9KE-6AF8.

Also on November 12, 2020, Chief Judge Barbera issued the Fourth Revised Order (Nov. 12, 2020), available at https://perma.cc/JH9Y-SPE8. The Fourth Revised Order made only non-substantive changes to cross-references. *See* Fourth Revised Order at 2 ("WHEREAS, The *Fifth Administrative Order Restricting Statewide Judiciary Operations Due to the COV[I]D-19 Emergency*, having been filed on November 12, 2020, requiring the courts to return to Phase III operations in light of surging COVID-19 infection rates throughout Maryland, technical amendments to the cross-references are necessary in related administrative orders…").

The COVID-19 surge continued to worsen. On November 24, 2020, the Chief Judge further restricted access to the courts by returning to Phase II operations, effective November 30, 2020, through January 15, 2021. *See* SIXTH ADMINISTRATIVE ORDER RESTRICTING STATEWIDE JUDICIARY OPERATIONS DUE TO THE COVID-19 EMERGENCY (Nov. 24, 2020), available at https://perma.cc/3QLD-EGE6. This severely restricted the number and types of cases that could be processed in the courts, primarily limiting such matters to those that needed to be expediently addressed.

It is notable, then, that Chief Judge Barbera issued her Fifth Revised Order relating to initiation of matters on the same day that she announced the Judiciary's intent to return

- 21 -

to Phase II operations. *See* Fifth Revised Order (Nov. 24, 2020), available at https://perma.cc/NQY3-LQMQ. Unlike the preamble to the Fourth Revised Order, which noted only that "technical amendments to the cross-references are necessary," Fourth Revised Order at 2, the preamble to the Fifth Revised Order stated: "WHEREAS, the *Sixth Administrative Order Restricting Statewide Judiciary Operations Due to the COVID-19 Emergency*, having been filed on November 24, 2020, requiring the courts to return to Phase II operations in light of surging COVID-19 infection rates throughout Maryland, *substantive* and technical amendments to the cross-references are necessary in related administrative orders[.]" Fifth Revised Order at 2 (emphasis added).

The substantive amendments that Chief Judge Barbera made in the Fifth Revised Order were to add the definition of "matters" in new section (e) and to amend section (g) so that the "relation-back" provision referenced new section (e) and no longer referenced the 15-day extension period (which now was addressed in section (f)).

Below are sections (d) through (g) from the Fifth Revised Order (which are identical to sections (d) through (g) in the Tenth Revised Order):

> (d) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days that the offices of the clerks of court were closed to the public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of that matter; and

> (e) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "matters" are, *nunc pro tunc* to March 16, 2020, those matters for which the statute of limitations and other deadlines related to initiation would have expired between March 16, 2020, through the termination date of COVID-19 emergency

operations in the Judiciary as determined by the Chief Judge of the Court of Appeals; and

(f) With the offices of the clerks of courts having been reopened to the public on July 20, 2020, the filing deadlines to initiate matters having been extended by previous Order, by an additional 15 days; and

(g) Any such filings made within the period described in (d) and (e) shall relate back to the day before the deadline would have expired had it not been tolled or suspended[.]

Fifth Revised Order at 3-4 (footnote omitted). Thus, in contrast to the Fourth Revised Order and its three predecessors, the Fifth Revised Order (and all successive orders, including the Tenth Revised Order) did not state that a filing made during the 15-day extension period "shall relate back to the day before the deadline would have expired had it not been tolled or suspended."

To recap: from May 2020 through the first part of the fall of 2020, Chief Judge Barbera did not make any substantive amendments to her orders indicating that the 15-day extension would apply to deadlines for "matters" that accrued after the courts reopened to the public.[23] However, on November 24, 2020, Chief Judge Barbera added a definition of

---

[23] Chief Judge Barbera first added section (d) in the Revised Order, at the same time that she added section (e), which identified the length of the extension of filing deadlines that would take effect after the clerk's offices reopened. Although, at that time, Chief Judge Barbera contemplated that the matters that would receive the 15-day extension were the same ones that would have been tolled or suspended during the time the clerk's offices were closed, it does not follow that Chief Judge Barbera meant for "tolling," as used in the prefatory clause of section (d), to have a compound object ("statutes of limitations and other deadlines related to the initiation of matters"). Indeed, as discussed above, Chief Judge Barbera referred to multiple "purposes" in that prefatory clause. At that time, it was already clear that the affected deadlines would be extended, not just tolled or suspended. Thus, it is reasonable to read the prefatory clause of section (d) in the Revised Order as referring separately to "tolling of statutes of limitations" and to "other deadlines for the

"matters" in new section (e) that referenced the entire period of the COVID-19 emergency and delinked the 15-day extension period from the section that provided for relation-back of deadlines that "would have expired had [they] not been tolled or suspended."

Chief Judge Barbera made these substantive changes at the same time that she moved the Judiciary back to Phase II operations due to "surging COVID-19 infection rates throughout Maryland." Prior to this surge, it appeared that the pandemic might be winding down. However, as of November 24, 2020, Maryland was averaging 2,253 new cases and 24 deaths daily. *See* Coronavirus Resource Center: Maryland, THE JOHNS HOPKINS UNIV., available at https://perma.cc/V36S-35CY.

In my view, this context makes the meaning of section (e) clear. The realization that COVID-19 was not going away any time soon – in fact, that it had worsened to the point that a regression to Phase II operations was necessary – led Chief Judge Barbera to broaden the application of the previously ordered 15-day extension such that the deadlines of *all* matters that otherwise would expire at some point during the COVID-19 emergency would be extended by the 15 days. The concerns that led Chief Judge Barbera to decide early in the pandemic that a 15-day extension of deadlines was necessary on top of tolling – *i.e.*, the adverse effects of COVID-19 on the ability of claimants and counsel to prepare initiating filings, whether or not the clerk's offices were open to accept them – were at least as serious, if not more serious, in November 2020.

---

initiation of matters." Under this reading, there is no inconsistency between the prefatory clauses of section (d) and section (e) in the Tenth Revised Order.

To be sure, one purpose for the addition of section (e) was to provide an end date for the application of the 15-day extension period; *i.e.*, by specifying that the order would only apply to matters that otherwise would have expired at some point during the COVID-19 emergency period, Chief Judge Barbera prevented a litigant with a claim that had accrued before or during the court closure period, but which would not expire until after the emergency period ended, from benefitting from the 15-day extension. But that could not have been the only reason why Chief Judge Barbera added the new definition of "matters" in section (e), given that she included the phrase "*nunc pro tunc*" in the definition.

"*Nunc pro tunc*" means "now for then," or an action "[h]aving retroactive legal effect." *Nunc Pro Tunc*, BLACK'S LAW DICTIONARY (11th ed. 2019). As I read section (e), it must be intended to cover, at least in part, some claims: (1) that, under the prior versions of the order, would not have been entitled to the 15-day extension; and (2) that Chief Judge Barbera had decided should retroactively benefit from that extension. As an example of such a claim, suppose two people got into an argument on August 3, 2020 (which was after the clerk's offices reopened), and one of them punched the other. The punching victim's civil claim for assault accrued on August 3, 2020. There is a one-year statute of limitations for a civil action for assault in Maryland. *See* Maryland Code, Cts. & Jud. Proc. § 5-105 (2020 Repl. Vol.). Under the order that was in effect on August 3, 2020 (the Second Revised Order), the 15-day extension would not apply to the deadline for this assault claim because the cause of action had not accrued before the reopening of the clerk's offices.

Therefore, unless extended, the deadline to file a complaint alleging a claim for assault would expire on August 3, 2021.

The "*nunc pro tunc*" language in section (e)'s new definition of "matters" would make the above hypothetical assault claim a "matter" under the Fifth Revised Order, meaning that it would retroactively receive the 15-day extension referred to in section (f). In light of surging COVID-19 infections in Maryland in November 2020, it makes perfect sense that the Chief Judge would decide that litigants with claims that had accrued since the reopening of the courts should receive the benefit of the 15-day grace period to account for the likelihood that, going forward, some percentage of them would be adversely affected by COVID-19 during the time that the emergency was in effect. If the Chief Judge had not intended to expand the scope of the 15-day extension so that it applied to matters that accrued after the reopening of the courts, there would have been no need to make substantive changes to the relevant language as it existed after she issued the Revised Order on May 22, 2020, let alone refer to any claims as "matters" on a "*nunc pro tunc*" basis.

Contrast my assault hypothetical with the Plurality's hypothetical: a claim with a three-year statute of limitations that would have expired in April 2021, meaning that it accrued in April 2018, and therefore its statute of limitations was tolled for the entire period of time the courts were closed. *See* Plur. Op. at 11 n.7. The problem with the Plurality's hypothetical is that it already received the benefit of the 15-day extension under the plain language of the pre-November 2020 orders. The pertinent language of the Revised Order (issued on May 22, 2020) provided:

(a) By previous Order, … *all* statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, were tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts were closed to the public due to the COVID-19 emergency; and

(b) By this Order, *those same deadlines remain tolled or suspended*, as applicable, effective March 16, 2020, for the number of days that the courts were closed to the public due to the COVID-19 emergency; and

(c) ….

(d) For the purposes of tolling of statutes of limitations and other deadlines related to the initiation of matters, in this Order, "tolled or suspended by the number of days that the courts were closed" means that the days the offices of the clerks of court were closed to the public (from March 16, 2020 through July 20, 2020) do not count against the time remaining for the initiation of the matter; and

(e) With the offices of the clerks of court to be reopened on July 20, 2020, the filing deadlines to initiate matters are hereby extended by an additional 15 days; and

(f) *Any such filings* made within the period specified in (d) and (e) shall relate back to the day before the deadline would have expired had it not been tolled or suspended[.]

Revised Order at 2-3 (footnote omitted) (emphasis added).

"All" deadlines, as referenced in section (a) of the Revised Order, and "those same deadlines," as discussed in section (b), encompass a claim (such as the Plurality's hypothetical claim) that accrued before the courts reopened to the public on July 20, 2020. And, under section (g) of the Revised Order, a filing initiating such a claim within the applicable tolling period plus 15 days would relate back to the day before the deadline would have expired had it not been tolled or suspended during the closure of the courts. Thus, it is clear that Chief Judge Barbera did not need to apply anything "*nunc pro tunc*"

- 27 -

in order for the Plurality's hypothetical claim to be subject to both the tolling period and the 15-day extension. However, if in November 2020, Chief Judge Barbera decided that she wanted the 15-day extension to apply to a claim like the one in my hypothetical that accrued between the date the clerk's offices reopened and the time she made her determination to expand the reach of the 15-day extension, including "*nunc pro tunc*" in the definition of "matters" made sense.[24]

_____

[24] I recognize that, if Chief Judge Barbera intended the 15-day extension to apply more broadly than it initially had, one would expect that, in section (g) she would have said that "[a]ny such filings made within the period described in (d) and (e) shall relate back to the day before the deadline would have expired had it not been tolled, suspended, *or extended.*" She did not add a reference to "extended" deadlines at the end of section (g). However, it is notable that Chief Judge Barbera also did not refer to the "extending" of deadlines in the Revised Order's title, despite the fact that she implemented the 15-day extension in that Order. *See* Revised Order at 1, 3 (title of the Order does not refer to "extending" deadlines, at the same time that section (e) extends deadlines to initiate matters by 15 days). Nor did the Chief Judge refer to the "extending" of deadlines in the titles of the Second and Third Revised Orders, despite their operative language extending the deadlines for filing matters by 15 days. Thus, the fact that Chief Judge Barbera omitted a reference to "extended" deadlines in section (g) of the Fifth Revised Order does not convince me that my colleagues' interpretation is correct. *See* Concur. Op. of J. Hotten at 7. This also highlights the weakness of the position that the absence of a reference to "extending" deadlines in the title of the Tenth Revised Order supports the conclusion that Chief Judge Barbera did not intend to expand the application of the 15-day extension in the Tenth Revised Order. *See, e.g.*, Concur. Op. of J. Hotten at 16-17.

In my view, the key point about section (g), as set forth in the Fifth Revised Order and its successors, is that Chief Judge Barbera provided for relation-back of filings "made within the period described in … [section] (e)," not section (f). The "period described in" section (e) is the entire COVID-19 emergency period. This begs the question why Chief Judge Barbera would refer to the entire COVID-19 emergency period if she wanted the 15-day extension to continue to apply only to the first few months of that period? If that had been Chief Judge Barbera's intention, it would have been far easier and clearer to maintain the linkage between the 15-day period and section (d) in the relation-back provision. And, again, there would have been no need to include any reference to "*nunc pro tunc*" in section (e).

It is difficult to reconcile Justice Hotten's characterization of section (f) as an "anomaly," *see* Concur. Op. of J. Hotten at 17, 20, with the Fifth Revised Order's new definition of "matters" in section (e), followed immediately by section (f), which also includes the word "matters."[25] The Plurality's and Justice Hotten's interpretations essentially render section (f) a superfluous provision amidst the operative language of the Tenth (and Fifth) Revised Order(s), which conflicts with one of this Court's most fundamental canons of statutory interpretation. *See, e.g.*, *Johnson v. State*, 467 Md. 362, 372 (2020) ("We read the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.") (internal quotation marks and citations omitted). In contrast to my colleagues' interpretations, my interpretation gives effect to all provisions in the Fifth and Tenth Revised Orders.[26]

---

[25] I also disagree with the Plurality's view that the retention of the example in section (f)'s footnote supports the position that Chief Judge Barbera did not intend to broaden the scope of section (f) when she added section (e)'s definition of "matters" in the Fifth Revised Order. *See* Plur. Op. at 9 ("Had Chief Judge Barbera intended to extend all deadlines, the example would have been unnecessary."). It remained helpful in November 2020 and beyond to provide the footnoted example for those claimants whose causes of action accrued prior to the clerk's offices reopening and who might otherwise find it confusing to determine when their claims would expire. For those whose claims accrued after July 20, 2020, but would expire on or before the end date of the COVID-19 emergency period, the application of the 15-day extension was more straightforward.

[26] The Fifth Revised Order was rescinded by the Sixth Revised Order, which Chief Judge Barbera issued on December 22, 2020. However, as noted above, the language of sections (a) through (g) remained the same in the subsequent orders, up to and including the Tenth Revised Order. Thus, the circumstances surrounding Chief Judge Barbera's issuance of the Fifth Revised Order – the Order in which she added section (e) and made the substantive change to the relation-back provision in section (g) – are critical to understanding Chief Judge Barbera's intent.

None of the other indicia to which Justice Hotten points persuade me that Chief Judge Barbera, as of November 24, 2020, still intended for the 15-day extension to apply only to matters that had accrued by the time the courts reopened to the public in July 2020. Most of what Justice Hotten relies on comes from the first few months of the pandemic. *See, e.g.*, Concur. Op. of J. Hotten at 13 (press release, dated May 22, 2020). As discussed above, I do not dispute that, at first, Chief Judge Barbera contemplated that the 15-day extension would apply only to claims that were tolled as a result of the closure of the clerk's offices. Thus, the fact that the Judiciary issued a press release in May 2020 that reflected the current understanding of the scope of the 15-day extension does not answer the question whether Chief Judge Barbera's intent with respect to the application of the 15-day extension changed in November 2020.

The only post-November 2020 item from the Chief Judge Barbera era[27] to which Justice Hotten refers is the inclusion of a Judiciary-created COVID-19 Timeline of Events in a January 8, 2021 meeting agenda for a briefing that Chief Judge Barbera gave to the Senate Judicial Proceedings Committee. In an entry dated May 22, 2020, the Timeline noted that, under the Revised Order, "[f]iling deadlines to initiate matters will be extended by an additional 15 days, depending on the date in which a specific clerk's office opens."

---

[27] In my view, the language of the Final Administrative Order sheds no light on Chief Judge Barbera's intent in making the substantive amendments to the Fifth Revised Order, *see* Concur. Op. of J. Hotten at 12, given that Chief Judge Barbera did not issue the Final Administrative Order.

Again, it is not remarkable that a description of the Revised Order would be consistent with Chief Judge Barbera's initial understanding of the scope of the 15-day extension.[28]

I also disagree with Justice Hotten's contention that the language of Maryland Rule 16-1003 supports a narrow interpretation of the Tenth Revised Order. That Rule provides, in relevant part:

> **(a) Generally.** Upon a determination by the Chief Justice of the Supreme Court that an emergency declared by the Governor … significantly affects *access to or* the operations of one or more courts …, the Chief Justice, by Administrative Order, may, to the extent necessary:
>
> …
>
> (7) suspend, toll, extend, or otherwise grant relief from time deadlines, requirements, or expirations otherwise imposed by applicable statutes, Rules, or court orders, including deadlines for appeals or other filings, deadlines for filing or conducting judicial proceedings, and the expiration of injunctive, restraining, protective, or other orders that otherwise would expire, where there is no practical ability of a party subject to such deadline, requirement, or expiration to comply with the deadline or requirement or seek other relief[.]

(Emphasis added).

The language of Rule 16-1003(a)(7) does not compel the conclusion that a decision by the Chief Justice to "extend, or otherwise grant relief from time deadlines" must be due to the inability of a litigant to file an initiating pleading due to the closure of a court or clerk's office. Rather, the emergency declared by the Governor must significantly affect

---

[28] The Timeline's entry for November 24, 2020, noted that Chief Judge Barbera issued the Fifth Revised Order on that date, but did not provide any further information about it. It is not clear why, despite the Fifth Revised Order having made (by its own description) substantive changes, the Timeline did not provide any information concerning those changes.

"access to" *or* "the operations" of one or more courts. Where thousands of people were falling sick daily with COVID-19 in November 2020, Chief Judge Barbera reasonably could conclude that, going forward, the pandemic would significantly affect individual access to the courts in the same way that justified the initial application of the 15-day grace period to claims that accrued during the period that the clerk's offices were closed. Thus, under Rule 16-1003(a)(7), Chief Judge Barbera had the authority to broaden the application of the 15-day extension to all matters with deadlines that would otherwise expire during the COVID-19 emergency period.

## C. A Contrary Interpretation Leads to Illogical and Unjust Results.

Ultimately, the Tenth Revised Order "must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *Lockshin*, 412 Md. at 276. In this regard, "consideration of the consequences of alternative interpretations of the [Tenth Revised Order] grounds the analysis." *In re O.P.*, 470 Md. 225, 255 (2020).

To help understand and assess the consequences of my colleagues' interpretation of the Tenth Revised Order, compared with mine, consider the following hypothetical case as it relates to Mr. Hosein's case. Imagine that a Maryland corporation entered into a contract to sell $500,000 worth of goods to another Maryland corporation in 2017. For some reason, the transaction fell apart, and the seller decided to sue the buyer. Assume the seller's cause of action for breach of contract for the sale of goods accrued on March 31, 2018. The applicable statute of limitations for such a claim is four years. *See* Md. Code, Com. Law § 2-725 (2013 Repl. Vol.). Thus, at the time the cause of action accrued on March 31, 2018, the seller had until March 31, 2022, to file its claim in a Maryland circuit court. It seems

clear that, under the applicable administrative order, the deadline to file this hypothetical claim would have been tolled by 126 days (the number of days the clerk's offices were closed) and then extended by another 15 days, meaning that the deadline to file the complaint became August 19, 2022.

Meanwhile, under my colleagues' interpretation of the Tenth Revised Order, Mr. Hosein was required to file his claim – which did not accrue until December 22, 2021 – no later than January 22, 2022, because the 15-day grace period does not apply.

I have no quarrel with the fact that the hypothetical breach-of-contract claim involving two corporations would receive the benefit of the 15-day extension, even though: (1) the plaintiff had almost two years to prepare its complaint prior to the closure of the clerk's offices; and (2) the combination of tolling and extending of the deadline allowed the claim to be filed more than four months after the COVID-19 emergency period ended. One could perhaps speculate that the plaintiff corporation probably did not need all that extra time, even if some of its employees and/or counsel contracted COVID-19 at some point during the COVID-19 emergency period. However, Chief Judge Barbera made the decision early in the pandemic that claimants would not need to show practical inability to comply with a deadline to initiate a matter to obtain the relief provided under her orders. That seems eminently sensible. It also seems sensible that, given the progression of the pandemic from May through October of 2020, the 15-day extension at first would only apply to claims that had accrued on or before the date that the Judiciary entered Phase III operations and the clerk's offices reopened.

However, given the remedial nature of this series of orders, and in light of the surge of COVID-19 cases that Chief Judge Barbera highlighted in the preamble to the Fifth Revised Order, it is illogical to interpret that Order's substantive amendments as not broadening the application of the 15-day extension to the deadlines of all claims that otherwise would expire during the period of the COVID-19 emergency. By November 24, 2020, Chief Judge Barbera necessarily understood that the future course of the pandemic was impossible to predict. She also must have understood that litigants whose claims accrued after the clerk's offices reopened were just as likely to be hampered by the virus in meeting initiating deadlines as litigants whose claims had accrued on or before the date that the clerk's offices reopened. Indeed, with stay-at-home orders lifted, infection rates surging, and no vaccine in sight, in November 2020 it stood to reason that litigants whose claims accrued after July 20, 2020 were *more* likely to need an extension of initiating deadlines.

Chief Judge Barbera could not specifically foresee in November 2020 that the Delta variant would arrive in Maryland in the late summer of 2021, or that the Omicron variant would descend upon Maryland in December 2021.[29] But, in November 2020, as she further

---

[29] The Omicron variant was in full swing for most of the 30-day limitations period that applied to Mr. Hosein's matter. *See* Greg Ng et al., *2021 Timeline: Coronavirus in Maryland*, WBAL-TV 11 (updated Jan. 4, 2022), available at https://perma.cc/K38N-2VUD (noting Omicron was confirmed in Maryland as of December 3, 2021, and that by December 29, 2021, Maryland surpassed 2,000 COVID-19 hospitalizations for the first time during the pandemic). Chief Judge Getty ordered the Judiciary to return to Phase III Operations between December 29, 2021 and February 8, 2022. *See* INTERIM ADMINISTRATIVE ORDER OF DECEMBER 27, 2021 RESTRICTING STATEWIDE JUDICIARY OPERATIONS IN LIGHT OF THE OMICRON VARIANT OF THE COVID-19 EMERGENCY (Dec.

revised her remedial orders granting relief to litigants from the application of initiating deadlines, she knew that the pandemic was far from over. If Chief Judge Barbera had not made any substantive changes in the Fifth Revised Order that referenced the entire COVID-19 emergency period, we would need to accept that, despite the surge in COVID-19 cases that was occurring at that time, the Chief Judge made a policy judgment not to provide relief to litigants like Mr. Hosein, whose claims accrued later in the pandemic. But the amendments in the Fifth Revised Order, which carried through to the Tenth Revised Order, can reasonably be read to grant relief from initiating deadlines with respect to all claims that would otherwise expire at some point during the emergency period. Given the remedial nature of the Tenth Revised Order, we are bound to adopt that reading of those amendments. Respectfully, my colleagues' failure to do so leads to an unjust result in this case and others like it.

**Conclusion**

The deadline to initiate Mr. Hosein's petition for judicial review expired during the COVID-19 emergency period. For the reasons stated above, the 15-day extension referred to in the Tenth Revised Order applied to Mr. Hosein's matter. With the benefit of a 15-day extension, Mr. Hosein's petition was timely filed. The circuit court erred in dismissing Mr. Hosein's petition for judicial review. Accordingly, I respectfully dissent.

---

27, 2021), available at https://perma.cc/T5QB-H7DM; *see also* Tramon Lucas et al., *2022 Timeline: Coronavirus in Maryland*, WBAL-TV 11 (updated Apr. 26, 2022), available at https://perma.cc/LRN6-93EN (noting on January 4, 2022, Governor Hogan issued a 30-day state of emergency and that by January 5, 2022, Omicron had become the dominant variant in Maryland).

Justice Watts and Justice Eaves have authorized me to state that they join in this opinion.